## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| LANG HOLDINGS, INC., | ) Case No. 09-12543 (KJC) |
| a Delaware Corporation, et al.,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Ref. Docket Nos. 14, 24 |

### FINAL ORDER (I) AUTHORIZING AND APPROVING DEBTORS' POST-PETITION FINANCING; (II) GRANTING LIENS AND SECURITY INTERESTS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (III) AUTHORIZING USE OF CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION; AND (IV) MODIFYING AUTOMATIC STAY

Upon the motion (the "Motion") of The Lang Companies, LLC (the "Borrower"), and its affiliated debtors, each as debtor and debtor-in-possession (collectively, the "Debtors"), in the above-captioned cases seeking, pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C §§ 101, et seq. (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), this Court's entry of an interim and this final order (this "Final Order"):

(a)     authorizing and approving postpetition financing (the "DIP Facility"), from Sun Lang Finance, LLC (together with any parties who subsequently become lenders in accordance with the terms of the DIP Credit Agreement (as defined below), the "DIP Lenders") to (i) fund, among other things, ongoing working capital needs of the Debtors, and (ii) pay fees and

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Lang Holdings, Inc. (9551); Turner Acquisition, Inc. (2115); Avalanche Publishing Acquisition, Inc. (3038); The Lang Companies, LLC (9182); Avalanche Publishing, Inc. (9793); and The Lang Store, Ltd. (2398). The mailing address of each of the Debtors is 514 Wells Street, Delafield, Wisconsin 53018.

expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Lenders under the DIP Credit Agreement and the other DIP Facility Documents (as defined below);

(b)    authorizing the Debtors to enter into and comply in all respects with the DIP Credit Agreement and the other DIP Facility Documents, and approval of all of the terms and conditions of the DIP Credit Agreement and the other DIP Facility Documents;

(c)    requesting that the financing under the DIP Credit Agreement, including, without limitation, as to all principal, accrued interest, unpaid fees and expenses, indemnification, and all other amounts due from time to time under the documents referred to below, including the Obligations[2] (collectively, the "DIP Facility Obligations"):

(i)    have priority, pursuant to Bankruptcy Code § 364(c)(1), over any and all administrative expenses, subject only to the Carve-Out (as defined below), which allowed superpriority claims of the DIP Lenders shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, as provided for herein; and

(ii)    pursuant to Bankruptcy Code § § 364(c)(2), (c)(3) and (d), be and be deemed to be secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior security interests in, and liens upon (all such liens and security interests granted to the DIP Lenders, pursuant to this Final Order and the DIP Facility Documents, the "DIP Facility Liens"), all prepetition and postpetition assets of the Debtors, whether now existing or hereafter acquired, including all of the real, personal and mixed property (including equity interests) and all monies and other property of any kind received on account thereof, and

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Credit Agreement.

2

all proceeds thereof (excluding the Debtors' pre-petition causes of action arising under Bankruptcy Code § § 502(d), 544, 545, 547, 548, 549, 550 and 551 (the "Avoidance Actions")), in which Liens are granted whether pursuant to the Interim Order and this Final Order, as applicable, the Collateral Documents, or otherwise, in each case as security for the DIP Facility Obligations (as defined below) (each of the foregoing, the "Collateral"), but specifically (i) being subject solely to the Carve-Out to the extent provided for below, and (ii) receiving a junior lien on all Collateral encumbered by the Permitted Encumbrances (as defined below), pursuant to Bankruptcy Code § 364(c)(2), subject to the provisions of paragraph 6 below;

(d)     authorizing the Debtors' use of the Prepetition Lenders' (as defined below) cash collateral and granting adequate protection on account of the Prepetition Loan Documents (as defined below) under Bankruptcy Code § § 105, 361, 362 and 363;

(e)     requesting, pursuant to Bankruptcy Rule 4001, that a final hearing be held before this Court to consider entry of an order authorizing and granting the relief requested in the Motion on a final basis; and

(f)     granting of certain related relief.

The Court having held an interim hearing (the "Interim Hearing") on the Motion on July 17, 2009, and the Court having found that notice of the Interim Hearing and the Motion and the interim relief requested therein was provided by the Debtors pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1) and Rule 2002-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), on the following parties: (a) the office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the entities listed on the Consolidated List of Creditors Holding Largest Thirty Unsecured Claims Against Each Debtor filed pursuant to Bankruptcy

K&E 15238618 7

Rule 1007(d); (c) the Internal Revenue Service; (d) the Securities and Exchange Commission; (e) counsel to the Prepetition Agent; and (f) any known party that has filed a lien against any of the Debtors' assets. The Court having held a final hearing (the "Final Hearing") on the Motion on August 13, 2009; and the Court having found that notice of the Motion and the relief requested therein was provided by the Debtors pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1) and Local Rule 2002-1, on the following parties: (a) U.S. Trustee; (b) the entities listed on the Consolidated List of Creditors Holding Largest Thirty Unsecured Claims Against Each Debtor filed pursuant to Bankruptcy Rule 1007(d); (c) the Internal Revenue Service; (d) the Securities and Exchange Commission; (e) counsel to the Prepetition Agent; (f) any known party that has filed a lien against any of the Debtors' assets; (g) counsel to the Creditors' Committee (defined below); (h) the taxing authorities to which the Debtors pay taxes; (i) the Debtors' landlords and (j) all parties who filed requests for notices pursuant to Bankruptcy Rule 2002 in the Debtors' Chapter 11 cases (collectively, the "Final Notice Parties"). The Court having considered all the pleadings filed with this Court; and having overruled all unresolved objections to the relief requested in the Motion; and upon the record made by the Debtors at the Interim and Final Hearing, including the Motion and other filings and pleadings in the Debtors' Chapter 11 cases, and after due deliberation and consideration and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    Petition Date. On July 16, 2009 (the "Petition Date"), each of the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or this "Court"). The Debtors

4

continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code § § 1107 and 1108.

B.     Jurisdiction and Venue. This Court has jurisdiction, pursuant to 28 U.S.C. § § 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § § 1408 and 1409.

C.     Notice. Notice of the Interim Hearing, Final Hearing, the Motion, the relief requested therein and proposed entry of this Final Order has been provided to the Final Notice Parties, pursuant to Bankruptcy Rules 4001(b) and (c) and 9014 and Local Rule 2001-1.

D.     Creditors' Committee. On July 27, 2009, the U.S. Trustee appointed the Official Committee of Unsecured Creditors in accordance with Bankruptcy Code § 1102 (the "Creditors' Committee").

E.     Loan Assignment Effective. The closing of the loan assignment between the Prepetition Agent and the Prepetition Lenders (in effect on the Petition Date), on the one hand, and the successor Prepetition Agent and successor Prepetition Lenders, on the other hand, has occurred.

F.     The Debtors' Stipulations as to Existing Secured Debt. Subject to the limitations contained in paragraph 10 of this Final Order, the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree that:

(a)     Prior to the Petition Date, the Debtors entered into that certain Credit Agreement dated as of November 4, 2003, by and among The Lang Companies, LLC, The Lang Store Ltd., Avalanche Publishing, Inc., and Turner Acquisition, Inc., as borrowers, the lenders from time to time party thereto (the "Prepetition Lenders") and Bank of America, N.A., as

5

successor-in-interest to LaSalle Bank, National Association,[3] as administrative agent (the "Prepetition Agent") (as may have been amended, modified or supplemented from time to time, the "Prepetition Loan Agreement") and certain other collateral and ancillary documents executed in connection therewith (as may have been amended, modified or supplemented from time to time, together with the Prepetition Loan Agreement, the "Prepetition Loan Documents").

(b)     As collateral for the Indebtedness owing pursuant to the Prepetition Loan Documents (the "Prepetition Indebtedness"), the Debtors granted to the Prepetition Lenders and Prepetition Agent a first-priority security interest in and lien upon (collectively, the "Prepetition Liens") substantially all of the Debtors' tangible and intangible personal property, including any proceeds therefrom as set forth in the Prepetition Loan Documents (the "Prepetition Collateral").

(c)     As of the Petition Date, the Debtors were indebted to the Prepetition Lenders and Prepetition Agent in the aggregate principal amount of not less than $18,932,867 plus accrued interest with respect thereto and any fees, expenses, costs and charges (the "Prepetition Obligations") provided under the Prepetition Loan Documents.

(d)     The Prepetition Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from Bankruptcy Code § 362).

(e)     No portion of the Prepetition Obligations are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

---

[3]     Bank of America, N.A. ("BANA") and LaSalle merged, effective October 17, 2008. BANA is thus the successor-in-interest with respect to all agreements discussed herein, and references herein to the "Prepetition Agent" shall refer to BANA or any successor thereto.

6

(f)     The Prepetition Liens in and to the Prepetition Collateral constitute valid, binding, enforceable, and perfected first-priority liens in and to the Prepetition Collateral, subject only to the liens described in the Prepetition Loan Documents, if any, and are not subject to avoidance, reduction, recharacterization, disallowance, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(g)     The Debtors do not have, and hereby forever release, any claim, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise against the Prepetition Lenders and the Prepetition Agent, and their respective affiliates, partners, members, agents, officers, directors, employees, attorneys and advisors whether arising under or in connection with the Prepetition Loan Documents or the transactions contemplated thereunder, the Prepetition Liens, the Prepetition Indebtedness or the Prepetition Obligations, including, without limitation, any right to assert any disgorgement or recovery with respect thereto.

(h)     The foregoing acknowledgments, stipulations and agreements are subject only to the rights of the Creditors' Committee and parties in interest pursuant to paragraph 10 below.

G.     <u>Findings Regarding Postpetition Financing.</u>

(a)     *Debtors' Request.* The Debtors have requested from the DIP Lenders, and the DIP Lenders are willing to continue to extend, certain loans, advances and other financial accommodations, as more particularly described and on the terms and conditions set forth in the Interim Order and this Final Order and the DIP Facility Documents.

(b)     *Need for Postpetition Financing.* The Debtors have a continuing need to continue to use and be granted authority to use the full amount of the DIP Facility and the

7

Prepetition Collateral, including the Cash Collateral, in order to permit, among other things, the orderly continuation of the operation of their businesses, the management and preservation of Debtors' assets and properties, to maintain business relationships with vendors, suppliers and customers, to make payroll, to satisfy other working capital and operational needs and maintain the going concern value of the Debtors' estates. Without such cash and credit, the Debtors' estates would be irreparably harmed.

(c) *Interim Financing Order.* On July 17, 2009, this Court entered the Interim Order (I) Authorizing and Approving Debtors' Post-Petition Financing; (II) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral and Affording Adequate Protection; (IV) Modifying Automatic Stay; and (V) Scheduling Final Hearing (the "Interim Order"). The Interim Order, including the findings made therein, is incorporated herein by reference.

(d) *No Credit Available on More Favorable Terms.* The Debtors represent that they are unable to obtain sufficient financing from sources other than the DIP Lenders on terms more favorable than under the DIP Credit Agreement (as defined below and in substantially the form affixed as Exhibit 1 to the Interim Order, subject to any modifications permitted hereunder and under the Interim Order, to the extent applicable) and any and all documents and instruments delivered pursuant thereto or in connection therewith (as may have been amended, modified or supplemented from time to time and inclusive of the DIP Credit Agreement, the "DIP Facility Documents") and are not able to obtain sufficient unsecured credit allowable as an administrative expense under Bankruptcy Code § 503(b)(1). The Debtors are also unable to obtain unsecured credit with the enhanced priority afforded by Bankruptcy Code § 364(c)(1). New credit is unavailable to the Debtors without providing the DIP Lenders with

8

(a) the DIP Facility Superpriority Claims and (b) the DIP Facility Liens as provided herein and in the DIP Facility Documents.

(e) *Budget.* The Debtors have prepared and delivered the Budget to the DIP Lenders, a copy of which Budget is attached hereto as Exhibit 1. Such Budget has been thoroughly reviewed by the Debtors and their management. The Debtors represent that the Budget is achievable and will allow the Debtors to operate their businesses and otherwise conduct their Chapter 11 cases. The DIP Lenders relied and continue to rely upon the Debtors' compliance with the Budget, subject to the variances permitted by the DIP Credit Agreement and continue to rely upon the Debtors' compliance with the Budget in accordance with this Final Order and subject to the variances permitted by the DIP Credit Agreement in determining to enter into, and continue to make available, the postpetition financing arrangements provided for herein.

(f) *Cash Collateral.* The Debtors stipulate, agree and acknowledge, subject to the rights of the Creditors' Committee or other party in interest pursuant to paragraph 10 below, that its cash, including, without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable, the sale of inventory or other disposition of Prepetition Collateral, constitute proceeds of the Prepetition Collateral and are cash collateral of the Prepetition Lenders within the meaning of Bankruptcy Code § 363(a) (the "Cash Collateral"). The Prepetition Lenders are entitled, pursuant to Bankruptcy Code § § 361, 363(c)(2), 363(e) and 364(d)(1), to adequate protection of its interests in the Prepetition Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Lenders' Prepetition Collateral, including, without limitation, any such diminution resulting from the use of Cash Collateral, the

9

implementation of the DIP Facility, the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code § 362. The Prepetition Lenders have indicated a willingness to consent and agree to allow the Debtors to use their Cash Collateral for so long as the DIP Facility Obligations remain outstanding.

(g) *Business Judgment and Good Faith Pursuant to Section 364(e)*. Based on the record of the Interim Hearing and the Final Hearing, the terms of the DIP Facility Documents and this Final Order, the DIP Facility Documents and the use of Cash Collateral are fair, just and reasonable under the circumstances, ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration. The use of Cash Collateral and the terms of the DIP Credit Agreement and the other DIP Facility Documents have been negotiated in good faith and at arm's length between the Debtors, the Prepetition Agent, the Prepetition Lenders, the DIP Agent and the DIP Lenders, with all parties represented by counsel, and any credit extended, loans made, and other financial accommodations extended to the Debtors by the Prepetition Lenders or the DIP Lenders shall be deemed to have been extended, issued, or made, as the case may be, in "good faith" as that term is used in Bankruptcy Code § 364(e) and in express reliance upon the protections afforded by Bankruptcy Code § 364(e) in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(h) *Good Cause, Immediate Entry*. The Debtors represent that the relief requested by the Motion is necessary, essential and appropriate and is in the best interests of and will benefit the Debtors, their estates and their creditors as its implementation will, among other

10

things, provide the Debtors with the necessary liquidity to (i) minimize disruption to the Debtors'

businesses and on-going operations, (ii) preserve and maximize the value of the Debtors' estates

for the benefit of all of the Debtors' creditors, and (iii) avoid immediate and irreparable harm to

the Debtors, their creditors, their businesses, their employees, and their assets. Thus, good cause

has been shown for entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and

4001(c)(2).

Based upon the foregoing, and after due consideration and good cause appearing therefor:

IT IS ORDERED, ADJUDGED AND DECREED, that:

1.    <u>Motion Granted.</u>  The Motion is granted in and to the extent provided in this Final
*on a final basis, except that Section 7.10⁽ᵉ⁾ of the DIP Credit*
Order. This Final Order shall immediately become effective upon its entry.  *Agreement is*
                                                                            *approved on an interim*
2.    <u>Objections Overruled.</u>  All objections to the entry of this Final Order are  *basis only)*
                                                                                         *and will be*
withdrawn or resolved by the terms hereof or, to the extent not resolved, are overruled.  *scheduled for*
                                                                                          *a final hearing*
3.    <u>Authorization of the DIP Financing Documents.</u>  The Debtors were by the Interim  *on August*
                                                                                             *21, 2009.*
Order and hereby are authorized to continue to use the Prepetition Lenders' Cash Collateral and

to continue to borrow under that certain Superpriority Priming Debtor-in-Possession Credit

Agreement (the "<u>DIP Credit Agreement</u>") by and between the Debtors, the DIP Lenders and Sun

Lang Finance, LLC, as administrative agent and collateral agent (in such capacity, the "<u>DIP</u>

<u>Agent</u>") (subject to any modifications permitted hereunder), provided that the Debtors continue

to satisfy the conditions to effectiveness thereof and the Debtors are not in default under the

terms of the Interim Order or this Final Order, in the case of borrowings under the DIP Facility

in an aggregate principal amount not to exceed $16.0 million following entry of this Final Order,

subject to the terms of the DIP Facility, and to continue to operate their businesses, in accordance

with the terms of this Final Order, the DIP Credit Agreement and the DIP Facility Documents.

Upon execution and delivery of the DIP Facility Documents, the DIP Facility Documents were

11

and continue to constitute and were deemed and hereby continue to be deemed to be legal, valid, and binding obligations of the Debtors and the Debtors' estates, enforceable against the Debtors and their estates in accordance with the terms of the DIP Facility Documents. Cash Collateral and available financing and advances under the DIP Credit Agreement will continue to be used or made only, in accordance with the terms and conditions of the DIP Credit Agreement, including Sections 6.11 and 7.10 thereof, to: (a) fund the Debtors' ordinary working capital and general corporate needs, and (b) to pay such other amounts as are required or permitted to be paid pursuant to the DIP Credit Agreement (including as limited by the Budget), the DIP Facility Documents, the Interim Order and this Final Order. Unless expressly modified in this Final Order, the findings, authorizations, protections and provisions contained in the Interim Order remain in full force and effect.

4. Execution and Compliance with DIP Facility Documents. The Debtors were by the Interim Order authorized to execute, deliver, perform and comply and are hereby authorized to continue to perform (and, to the extent necessary or applicable, execute and deliver) and comply with all of the terms and covenants of the DIP Credit Agreement and DIP Facility Documents, each of which constitute valid, binding, enforceable and non-avoidable obligations of the Debtors for all purposes during the Debtors' Chapter 11 cases, any subsequently converted case of any Debtor under Chapter 7 of the Bankruptcy Code or after the dismissal or reorganization of any Debtor's Chapter 11 case. The Debtors were by the Interim Order and are hereby authorized to perform all acts, and execute and comply with the terms of all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), as the DIP Agent may reasonably require as evidence of and for the protection of the DIP Facility Obligations and the Collateral or which may be otherwise deemed

12

necessary by the DIP Agent to effectuate the terms and conditions of this Final Order and the DIP Facility Documents.

5.      DIP Facility Superpriority Claims. As security for the DIP Facility Obligations now existing or hereafter arising pursuant to the DIP Facility, the DIP Facility Documents and this Final Order, the DIP Lenders were by the Interim Order and continue to be granted pursuant to this Final Order, allowed super-priority administrative claims pursuant to Bankruptcy Code § 364(c)(1), which claims shall have priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, now in existence or hereafter incurred by any of the Debtors and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, Bankruptcy Code § § 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726 and/or 364(c)(1) (the "DIP Facility Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre and postpetition property of the Debtors and all proceeds thereof, provided, however, that the DIP Facility Superpriority Claims shall be subordinate only to the Carve-Out to the extent specifically provided for in paragraph 8 of this Final Order and the Permitted Encumbrances (as defined below); provided further, however, that the DIP Superpriority Claims shall not be payable from or have recourse to the proceeds of Avoidance Actions.

6.      DIP Facility Liens. As security for the DIP Facility Obligations, pursuant to Bankruptcy Code § § 364(c)(2), (c)(3), and (d) and the consent of the Prepetition Lenders and the Prepetition Agent, the DIP Lenders were by the Interim Order, and hereby continue to be, granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements,

13

control agreements, pledge agreements, lock box agreements financing statements, or otherwise) the following DIP Facility Liens (excluding Avoidance Actions and the proceeds thereof):

(a)     pursuant to Bankruptcy Code § 364(c)(2), valid, perfected, enforceable and non-avoidable first priority liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, are not subject to valid, perfected and non-avoidable liens, including, without limitation, any unencumbered cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds and products of all the foregoing (excluding Avoidance Actions and the proceeds thereof);

(b)     pursuant to Bankruptcy Code § 364(c)(3), valid, perfected, enforceable and non-avoidable second priority or other junior liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors (excluding Avoidance Actions and the proceeds thereof) that are subject to valid, perfected, enforceable and non-avoidable liens in existence on the Petition Date or to valid liens in existence on the Petition Date that are perfected subsequent to such commencement as permitted by Bankruptcy Code § 546(b) (other than assets and property that are subject to the existing liens as referred to in subparagraph (c) below, which existing liens shall be primed as provided therein) (such liens described in this subparagraph (b) as are in existence on the Petition Date, the "Permitted Encumbrances");

(c)     pursuant to Bankruptcy Code § 364(d), valid, perfected, enforceable and non-avoidable first priority senior priming liens on and security interests in the Prepetition

14

Collateral and the proceeds and products thereof (excluding Avoidance Actions and the proceeds thereof). Such security interests and liens shall be senior in all respects to (i) the interests in such property of the Prepetition Agent and the Prepetition Lenders arising from current and future liens of the Prepetition Agent and the Prepetition Lenders (including, without limitation, the Adequate Protection Liens (defined below)) and (ii) the interests in such property held by any party whose interests are junior to the interests of the Prepetition Agent and Prepetition Lenders, other than, for avoidance of doubt, Permitted Encumbrances; and

(d)     the DIP Facility Liens and the Adequate Protection Liens (defined below) shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code § 551 or (B) any liens arising after the Petition Date, or (ii) subordinated to or made *pari passu* with any other lien or security interest under Bankruptcy Code § § 363 or 364 or otherwise other than as set forth in this Final Order.  The DIP Facility Liens shall not be subject to Bankruptcy Code § § 510, 549 or 550.

7.     Adequate Protection.  The Prepetition Lenders and Prepetition Agent are entitled to adequate protection for the DIP Facility Liens and the Debtors' use of Cash Collateral.  As adequate protection, the Prepetition Lenders and Prepetition Agent were granted and continue to be granted (effective and perfected upon the entry of the Interim Order and without the necessity of the execution by the Debtors of security agreements, financing statements or other agreements) valid and perfected replacement security interests in and liens upon all Prepetition Collateral of the Debtors and the proceeds thereof (excluding Avoidance Actions and the proceeds thereof) solely to the extent of diminution in the value of the Prepetition Collateral (collectively, the "Adequate Protection Liens"), subject and subordinate only to (i) the

15

Prepetition Liens, (ii) the DIP Facility Liens granted to the DIP Lenders under the Interim Order and this Final Order and pursuant to the DIP Credit Agreement and (iii) the Carve-Out.

8.     Carve-Out. Liens, security interests and super-priority administrative expense claims of the Prepetition Lenders, the Prepetition Agent, the DIP Agent and the DIP Lenders shall be subject to and subordinate only to (a) unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) (collectively, the "UST/Clerk Fees"); (b) unpaid and allowed fees and expenses of professional persons, retained by any Debtor or any Committee (collectively, the "Professionals"), in each case, incurred on and prior to delivery of a notice (the "Carve-Out Trigger Notice") to the Debtors, their counsel, the U.S. Trustee and counsel to the Creditors' Committee following the occurrence and during the continuation of an Event of Default under any of the DIP Facility Documents, in an amount not in excess of the aggregate amounts permitted under the Budget through the period from the Closing Date to the date of the Carve-Out Trigger Notice; and (c) unpaid and allowed fees and expenses of Professionals incurred subsequent to delivery of a Carve-Out Trigger Notice, in an aggregate amount not to exceed $250,000 (the "Professional Expense Cap"); provided, however, that the Professional Expense Cap shall be reduced, dollar for dollar, by the amount of any fees, costs and expenses incurred and paid to Professionals subsequent to delivery of a Carve-Out Trigger Notice; provided, further, that the payment of compensation and reimbursement of expenses allowed and payable under 11 U.S.C. § 330 and 11 U.S.C. § 331 as set forth in paragraph 9 below shall not reduce the Carve-Out prior to the delivery of a Carve-Out Trigger Notice. The Carve-Out shall be free and clear of all liens, claims and encumbrances granted hereunder and shall be subject only to the allowed claims of the Professionals for such fees and expenses as may be awarded by the Court under Bankruptcy Code § § 327 or 328; provided, however, the

16

Carve-Out cannot be used for the payment or reimbursement of any fees or disbursements of the Debtors or the Creditors' Committee or any other party-in-interest incurred in connection with the assertion or joinder in any claim, counter-claim, action, proceeding, application, motion or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief: (1) invalidating, setting aside, avoiding, subordinating, in whole or in part, the DIP Facility Obligations or the Prepetition Indebtedness or any lien and security interest securing the DIP Facility Obligations or the Prepetition Indebtedness; or (2) preventing, hindering or delaying, whether directly or indirectly, the assertion by the Prepetition Lenders or the DIP Lenders or enforcement by the Prepetition Lenders or the DIP Lenders or enforcement by the Prepetition Lenders or the DIP Lenders of its liens or realization upon any of the respective Collateral; or (3) challenging the postpetition liens or claims seeking an affirmative recovery from the Prepetition Lenders or the DIP Lenders; provided that the Carve-Out may be used to investigate the Prepetition Indebtedness and the validity and perfection of the liens and security interests securing the Prepetition Indebtedness.

9.    Fees and Expenses of Professionals.  So long as no Default or Event of Default shall have occurred and be continuing or have occurred and be waived, the Debtors shall be permitted to pay the compensation and reimbursement of fees and expenses allowed and payable under Bankruptcy Code § § 328, 330 and 331 (but excluding fees and expenses of third party professionals employed by Creditors' Committee members), as the same may be due and payable and as are otherwise permitted under this Final Order and the DIP Credit Agreement. Nothing contained herein is intended to constitute, nor should be construed as consent to the allowance of any fees, disbursements or expenses by any party and nothing herein shall affect the ability or right of the Debtors, the DIP Agent, the DIP Lenders, the Creditors' Committee, the U.S. Trustee

17

or any other party in interest to object to the allowance and payment of any amounts incurred or requested. In addition, neither the DIP Agent nor any DIP Lender shall be responsible for the payment or reimbursement of any fees or disbursements of any professional retained by the Debtors or the Creditors' Committee pursuant to Bankruptcy Code § § 327, 328 or 1103(a).

10.    Prepetition Loan Challenge. The stipulations and admissions contained in this Final Order shall be binding upon the Debtors and their estates in all circumstances. Subject to the terms of this paragraph, the Creditors' Committee shall have sixty (60) days from the date of formation within which to commence an adversary proceeding (collectively, a "Prepetition Loan Challenge") ~~with respect~~ solely ~to the validity,~ challenge ~to~ the validity, priority, extent, perfection, and enforceability of the Prepetition Liens, the Prepetition Loan Documents, the Prepetition Obligations or the Prepetition Indebtedness without prejudice to the Chapter 7 trustee to seek to extend the investigation period if the cases are converted to Chapter 7 prior to expiration; provided, however, that such investigation period can be extended (a) by consent of the Creditors' Committee and the Prepetition Lenders or (b) upon order of this Court granting a motion by the Creditors' Committee for cause to extend such investigation period if such consent is withheld by the Prepetition Lenders for any reason; provided further, however, that nothing in this Final Order shall prejudice the right of the Creditors' Committee to seek standing to commence a Prepetition Loan Challenge. If such a Prepetition Loan Challenge is not timely commenced within such applicable period set forth above, (a) the stipulations contained in paragraph F of this Final Order shall be irrevocably binding on the estates, the Creditors' Committee and all parties in interest (including without limitation a receiver, administrator, or trustee appointed in this case or in any jurisdiction), (b) the Prepetition Liens or the Prepetition Indebtedness and the Prepetition Lenders' liens upon and security interests in the Collateral shall be recognized and allowed as

18

valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses and perfected, (c) the Creditors' Committee and any other party in interest (including without limitation a receiver, administrator, or trustee appointed in this case or in any jurisdiction) shall thereafter be forever barred from bringing any Prepetition Loan Challenge, and (d) the Prepetition Agent and the Prepetition Lenders and their respective agents, officers, directors and employees shall be deemed released and discharged from all claims and causes of action of any kind, nature or description arising at any time immediately prior to the Petition Date, and all of Debtors' acknowledgements, releases and waivers of claims granted to or in favor of the Prepetition Agent and the Prepetition Lenders relating to the Prepetition Loan Documents or the transactions contemplated thereunder, the Prepetition Obligations, the Prepetition Indebtedness and the Prepetition Liens in accordance with this Final Order shall be binding upon all parties-in-interest in the Debtors' Chapter 11 cases and/or in any subsequently converted case(s) under Chapter 7 of the Bankruptcy Code. Nothing in this Final Order shall be deemed to confer or deny standing to commence an action on the Creditors' Committee.

11. <u>Waiver of 506(c) Claims Against the Prepetition Lenders and the DIP Lenders.</u> Except for the Carve-Out and effective upon entry of this Final Order, no costs or expenses of administration which already have been, or may hereafter be, incurred in the Debtors' Chapter 11 cases or in any subsequently converted case under Chapter 7 of the Bankruptcy Code shall be charged or asserted by the Debtors against the Prepetition Lenders or the DIP Lenders, their claims or the Collateral, pursuant to Bankruptcy Code § § 105 or 506(c) or otherwise without the prior written consent of the Prepetition Lenders or the DIP Lenders (and no such consent shall be implied from any other action, inaction or acquiescence by the Prepetition Lenders or the DIP

For the avoidance of any and all doubt, this paragraph shall not limit the time within which the Creditors' Committee may commence any and all actions not related to a challenge of the validity, priority, extent, perfection or enforceability of the Prepetition Liens, Prepetition Loan Documents, Prepetition Obligations or Prepetition Indebtedness

K&E 15238618.7

Lenders in this proceeding, including, but not limited to, funding of the Debtors' ongoing operations by the DIP Lenders).

    12.    Restrictions on Use of Proceeds. Subject to the limitations applicable in the DIP Credit Agreement, the Debtors shall use the Prepetition Lenders' Cash Collateral and the proceeds of the DIP Facility made or arranged for by the DIP Lenders pursuant to the DIP Facility Documents and this Final Order, and in accordance with this Final Order and the Budget: (a) to support the working capital and general corporate purposes of the Debtors, (b) to make any other payments permitted to be made by the Bankruptcy Code, in this Final Order or in any other order of this Court to the extent provided for under the DIP Facility Documents or expressly consented to by the DIP Lenders as provided in the DIP Facility Documents, (c) to pay certain fees and expenses relating to the credit facilities established under the DIP Facility Documents, and (d) to promptly pay all prepetition, present and future costs, fees, charges and expenses of the DIP Lenders following receipt of a summary invoice (with a copy provided to the U.S. Trustee and the Creditors' Committee's counsel subject to confidentiality and applicable privileges), including all reasonable fees and expenses of consultants, advisors, professionals and attorneys paid or incurred at any time in connection with these cases whether incurred prepetition or postpetition, all of which unpaid costs and expenses shall be added to, and are included as part of, the principal amount of the DIP Facility Obligations, secured by the Collateral and afforded all of the rights, priorities and protections afforded to the DIP Lenders in respect of the DIP Facility Obligations under this Final Order and the DIP Facility Documents; provided, however, that no such payment shall be made to the DIP Lenders until ten (10) days following service of such summary invoice upon the Debtors, the Creditors' Committee and the U.S. Trustee. None of such DIP Lenders' costs, fees, charges, and expenses shall be subject to Court approval, and

20

no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court, provided that the Court shall have jurisdiction to determine any dispute concerning such invoices.

13.    Commitment Termination Date.  The DIP Facility Obligations shall be due and payable, without notice or demand, on the Maturity Date.

14.    Restrictions on the Debtors.  Other than the Carve-Out, the Debtors shall not seek entry of an order granting any claim that has a priority superior or *pari passu* with those granted by the Interim Order or this Final Order to the DIP Lenders, while any portion of the DIP Facility (or refinancing thereof) or the commitment thereunder remains outstanding without the consent of the DIP Lenders.  Except as may be expressly permitted by the DIP Credit Agreement, the Debtors will not, at any time during the case, grant mortgages, security interests, or liens in the Collateral or any portion thereof to any other parties pursuant to Bankruptcy Code § 364(d) or otherwise without the consent of the DIP Lenders in their sole discretion.

15.    Lien Perfection.  Either the Interim Order or this Final Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the liens and security interests in and upon the Collateral granted herein, effective as of the date of the entry of the Interim Order, pursuant to the Interim Order or this Final Order and/or the DIP Facility Documents, without the necessity of (a) filing, recording or serving any financing statements, mortgages, deeds of trust or other agreements, documents or instruments which may otherwise be required under federal or state law in any jurisdiction (collectively, the "Lien Recording Documents"), (b) taking possession of Collateral or evidence thereof (provided, that, without limiting the foregoing, any third party in possession of any Collateral is hereby deemed a bailee for the benefit of and on behalf of the DIP Lenders) or (c) taking any other action to validate or

21

perfect the liens and security interests granted in the Interim Order or this Final Order and/or the DIP Facility Documents. If the DIP Agent shall, in its discretion, elect for any reason to file any such Lien Recording Documents with respect to such liens and security interests, the Debtors are authorized and directed to execute, or cause to be executed, all such Lien Recording Documents upon the DIP Agent's request and the filing, recording or service thereof (as the case may be) of such Lien Recording Documents shall be deemed to have been made at the time of and on the Petition Date. The DIP Agent may, in its discretion, without seeking modification of the automatic stay under Bankruptcy Code § 362, file a certified copy of the Interim Order or this Final Order in any filing or recording office in any county or other jurisdiction in which the Debtors have an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of the Interim Order or this Final Order. To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the liens and security interests authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of this Court (provided that if the DIP Agent takes steps to perfect the DIP Facility Liens under otherwise applicable state law, it does so without waiving the benefits of this provision of this Final Order of the corresponding provision of the Interim Order). In the event that any Lien Recording Document which the DIP Agent elects to file in accordance with this paragraph contains any limitations, defects, deficiencies or other information which might otherwise limit or adversely affect the DIP Agent's and the DIP Lenders' liens upon and security interests in the Collateral or any of the DIP Agent's or the DIP Lenders' claims, rights, priorities and/or protections afforded under the

22

Interim Order or this Final Order and/or the DIP Facility Documents, such limitations, defects, deficiencies or other information shall not impair, limit, restrict or adversely affect in any way any of the DIP Agent's and the DIP Lenders' liens and security interests in the Collateral or their claims, rights, priorities and/or protections granted under the Interim Order or the Final Order and/or the DIP Facility Documents.

16. <u>Modification of Automatic Stay</u>. Subject only to the provisions of the DIP Credit Agreement and without further order from this Court, the automatic stay provisions of Bankruptcy Code § 362 are vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to implement the provisions of the DIP Facility Documents, the Interim Order and this Final Order including exercising, upon the occurrence and during the continuance of any Event of Default, all rights and remedies provided for in the DIP Facility Documents; <u>provided</u>, <u>however</u>, that prior to the exercise of any enforcement or liquidation remedies against the Collateral, the DIP Lenders shall be required to give three (3) business days' written notice to the Debtors, its bankruptcy counsel, the Creditors' Committee's counsel, if any, and the U.S. Trustee. Notwithstanding the occurrence of an Event of Default or the Commitment Termination Date or anything herein, all of the rights, remedies, benefits, and protections provided to the DIP Agent and the DIP Lenders under the DIP Facility Documents, the Interim Order and this Final Order shall survive the Maturity Date.

17. <u>Binding Effect of Final Order and DIP Facility Documents</u>.

(a) The Debtors irrevocably waive any right to seek any modifications or extensions of the Interim Order or this Final Order without the prior written consent of the DIP Agent and the DIP Lenders as authorized under the DIP Credit Agreement to give such consent,

23

and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the DIP Lenders.

(b)     The provisions of the Interim Order or this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered converting any of the Debtors' Chapter 11 cases to a Chapter 7 case, dismissing any of the Debtors' bankruptcy cases (in the case of any such dismissal, to the maximum extent permitted under the Bankruptcy Code and other applicable law) or any order which may be entered confirming or consummating any plan of reorganization of the Debtors; and the terms and provisions of the Interim Order or the Final Order as well as the priorities in payment, liens, and security interests granted pursuant to this Final Order and the DIP Facility Documents shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by the Interim Order or this Final Order until all DIP Facility Obligations are indefeasibly paid and satisfied in full; provided that all obligations and duties of the DIP Lenders hereunder, under the DIP Facility Documents or otherwise with respect to any future loans and advances or otherwise shall terminate immediately upon the earlier of the date of any Event of Default, the Maturity Date or the date that a plan of reorganization of the Debtors becomes effective unless the DIP Agent and the DIP Lenders as is required under the DIP Facility Documents have given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Agent and the DIP Lenders.

(c)     The provisions of the Interim Order and this Final Order and the DIP Facility Documents shall be binding upon and inure to the benefit all parties-in-interest in these cases, including, without limitation, the Debtors, the DIP Agent, the DIP Lenders, the Prepetition

24

Lenders, the Prepetition Agent, and the Creditors' Committee, subject to the provisions contained in paragraph 10 of this Final Order, and their respective successors and assigns (including, to the fullest extent permitted by applicable law, any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for any Debtor's estate, an examiner appointed pursuant to Bankruptcy Code § 1104 (upon entry of a Final Order) or any other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the Debtors' estates), and shall inure to the benefit of the Debtors, the DIP Lenders, the Prepetition Lenders, the Prepetition Agent, and the Creditors' Committee, and their respective successors and assigns; provided, however, that DIP Lenders shall have no obligation to extend any financing to any Chapter 7 trustee or similar responsible person appointed for the Debtors' estates.

18.     Survival.  The rights of the DIP Agent and the DIP Lenders under the DIP Facility Documents or this Final Order, the provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order (i) confirming a plan of reorganization in these cases (and, to the extent not satisfied in full in cash, the DIP Facility Obligations shall not be discharged by the entry of any such order, or pursuant to Bankruptcy Code § 1141(d)(4), the Debtors having hereby waived such discharge); (ii) converting any of the cases to a chapter 7 case; or (iii) dismissing any of the cases, and the terms and provisions of this Final Order as well as the DIP Facility Superpriority Claims and the DIP Facility Liens granted to and conferred upon the DIP Agent and the DIP Lenders and the protection afforded to the DIP Agent and the DIP Lenders pursuant to this Final Order and the DIP Facility Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Final Order and the DIP Facility Documents and to the maximum extent permitted by law until all of the DIP Facility Obligations shall have been paid

25

and satisfied in full in accordance with the provisions of the DIP Credit Agreement (and that such DIP Facility Liens, DIP Facility Superpriority Claims and other protections shall remain binding on all interested parties).

19.    Nullifying Prepetition Restrictions on Postpetition Lien Grants.. Notwithstanding anything to the contrary contained in any prepetition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, any provision that restricts, limits or impairs in any way any Debtor's ability or right to grant liens or security interests upon any of the Collateral (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the DIP Facility Documents or this Final Order or otherwise enter into and comply with all of the terms, conditions and provisions thereof (all such provisions being collectively referred to as the "Restrictive Clauses") shall not be effective and shall be unenforceable against any such Debtor and the DIP Lenders to the maximum extent permitted under the Bankruptcy Code and other applicable law, but only with respect to the entry of this Final Order granting such postpetition financing, and, therefore, shall not adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the DIP Agent and the DIP Lenders pursuant to this Final Order and/or the DIP Facility Documents or any of the rights of the DIP Agent and the DIP Lenders hereunder or thereunder to the maximum extent permitted under the Bankruptcy Code and other applicable law. Such Restrictive Clauses shall not, to the maximum extent permitted under the Bankruptcy Code and applicable law, render any contract or lease unable to be assumed and/or assigned by any Debtor (or by the DIP Agent or the DIP Lenders pursuant to the provisions contained in this Final Order), or in any way impair or limit the ability or right of any Debtor (or by the DIP

26

Agent or the DIP Lenders, on behalf of any Debtor, pursuant to the provisions contained in this Final Order) to assume and/or assign any contract or lease under Bankruptcy Code § § 365 or 1123.

20. <u>After-Acquired Property.</u> Except as otherwise provided in this Final Order, pursuant to Bankruptcy Code § 552(a), all property acquired by the Debtors after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Lenders, on behalf of itself, pursuant to the Debtors' use of Cash Collateral, the DIP Facility Documents and this Final Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date (other than Permitted Encumbrances), except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date which is not subject to subordination under Bankruptcy Code §510(c) or other provisions or principles of applicable law.

21. <u>Access to the Debtors.</u> Without limiting the rights of access and information afforded the DIP Agent and the DIP Lenders under the DIP Facility Documents, the Debtors shall permit representatives, agents and/or employees of the DIP Agent and the DIP Lenders to have reasonable access to its premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtors' business) and shall cooperate, consult with, and provide to such representatives, agents and/or employees all such information as they may reasonably request.

22. <u>Amendment to DIP Facility Documents.</u> The DIP Agent and the DIP Lenders, with the consent of the Debtors, are authorized to amend and/or modify the DIP Credit Agreement or any other DIP Facility Documents without further order of the Court on non-

27

material matters; provided that notice of any such amendments must be provided to the Creditors' Committee at least two (2) calendar days prior to such amendment taking effect; provided further that any amendments or modifications that would have the effect of shortening the maturity date of the facilities or increasing the aggregate fees payable, or the rate or amount of interest payable, under the DIP Facility Documents or otherwise materially alter the DIP Facility Documents shall be done only pursuant to further order of the Court; provided, however, that any amendment or modification to increase the aggregate amount of borrowings permitted must be in writing, filed with the Court and served upon counsel for the Creditors' Committee (if appointed at such time) and all parties who filed requests for notices pursuant to Bankruptcy Rule 2002, and shall become effective upon entry of an order of this Court.

23. Insurance Policies. Upon entry of this Final Order, the DIP Agent shall continue to be, and shall continue to be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the Debtors which in any way relates to the Collateral. The Debtors are authorized and directed to continue to take any action necessary to have the DIP Agent added as an additional insured and loss payee on each insurance policy.

24. Conclusive Evidence of DIP Facility Obligations. The terms, conditions and covenants of the DIP Credit Agreement and the other DIP Facility Documents shall be sufficient and conclusive evidence of the borrowing and financing arrangements among the Debtors and the DIP Lenders for all purposes, including, without limitation, the Debtors' obligation to pay all principal, interest, fees (including, without limitation, unused line fees, agency fees, servicing fees, letter of credit fees, closing fees, syndication fees, early termination fees and appraisal fees), and other costs and expenses (including, without limitation, all reasonable fees and

28

expenses of consultants, advisors and attorneys), as more fully set forth and to the extent provided in the DIP Credit Agreement and the other DIP Facility Documents.

25.     Maintenance of Collateral. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, except for sales expressly permitted by the DIP Credit Agreement, sales of the Debtors' inventory in the ordinary course of their businesses or except as otherwise provided for in the DIP Facility Documents and/or this Final Order. Nothing contained in this paragraph shall limit or impair the right of any lessor or other contract party of any Debtor to request that the Court compel the Debtors to assume or reject any lease or license of real or personal property.

26.     Remedies upon Occurrence of Event of Default. In the event of any of the following: (a) the failure of the Debtors to perform in any material respect any of their obligations pursuant to the Interim Order or this Final Order, (b) the occurrence and continuation of any "Event of Default" as defined under the DIP Credit Agreement or the other DIP Facility Documents, (c) the termination or non-renewal of the DIP Facility Documents as provided for in the DIP Credit Agreement, or if terminated sooner by an order of this Court, or (d) any termination events occurring under the DIP Facility Documents (each of the foregoing being referred to in this Final Order, individually, as an "Event of Default" and collectively, as the "Events of Default"); then (unless such Event of Default is specifically waived in writing by the DIP Agent and the DIP Lenders as provided for in the DIP Facility Documents, which waiver shall not be implied from any other action, inaction or acquiescence by the DIP Agent or the DIP Lenders) the DIP Agent or the DIP Lenders may, notwithstanding the provisions of Bankruptcy Code § 362, without any application, motion or notice to or order from, the Bankruptcy Court, without prior notice, take any one or more of the following actions: (a) terminate all or any

29

portion of the Commitment whereupon the DIP Agent's or the DIP Lenders' obligation to make further Term Loans shall terminate; (b) declare all or any portion of the DIP Facility Obligations to be forthwith due and payable whereupon such DIP Facility Obligations shall become and be due and payable; and/or (c) exercise any rights and remedies provided to the DIP Agent or the DIP Lenders under the DIP Facility Documents or at law or equity, including all remedies provided under the Bankruptcy Code; and, pursuant to the Interim Order and this Final Order, the automatic stay of Bankruptcy Code § 362 shall be modified and vacated to permit the DIP Agent or the DIP Lenders to exercise their remedies under the DIP Credit Agreement and the DIP Facility Documents, without further application or motion to, or order from, the Bankruptcy Court; provided, however, notwithstanding anything to the contrary contained herein, the DIP Agent or the DIP Lenders shall be permitted to exercise any remedy in the nature of a liquidation of, or foreclosure on, any interest of Borrower in the Collateral only upon five (5) calendar days' prior written notice to the Debtors, the United States Trustee for the District of Delaware, and any counsel approved by the Bankruptcy Court for the Creditors' Committee. Unless the Court orders otherwise, upon the occurrence of an Event of Default and the exercise by the DIP Agent or the DIP Lenders of their rights and remedies under the DIP Credit Agreement and the other DIP Facility Documents after the expiration of the notice period described herein, the Debtors shall assist the DIP Agent to the extent practicable in effecting a sale or other disposition of the Collateral upon such terms as are designed to maximize the proceeds obtainable from such sale or other disposition. Nothing contained in the Interim Order or this Final Order or otherwise shall be construed to obligate the DIP Agent or the DIP Lenders in any way to lend or advance any additional funds to the Debtors, or provide other financial accommodations to the Debtors upon or after the occurrence of an Event of Default.

30

27.     Protective Advances.  In the event that an Event of Default has occurred as a result of a Debtor's failure to comply with Sections 7.10(a), (b) or (c)(ii) of the DIP Credit Agreement (the "Specified Defaults"), the Sponsor may, within 5 days from the first date of the occurrence of such Event of Default (as defined in the DIP Credit Agreement), provide written notice to the DIP Agent and the Creditors' Committee, which notice shall be irrevocable, of a commitment to provide up to $5,000,000 of the Term Loans or, if less, the difference between $16,000,000 and the Term Loans then outstanding (the "Sponsor Tranche").  Upon receipt of the foregoing written notice, the DIP Agent shall agree in writing to forbear for no longer than 30 days from exercising remedies with respect to the Specified Defaults, but, for the avoidance of doubt, shall no longer have any obligation to fund any Term Loans unless and until the conditions in Section 4.02 of the DIP Credit Agreement are satisfied (if at all), and any agreement to forbear shall not in any way constitute a waiver of Defaults or Events of Default. The Sponsor Tranche shall be Term Loans under the DIP Credit Agreement, provided that notwithstanding anything herein or in any DIP Facility Document to the contrary, no Term Loan constituting a Sponsor Tranche, and no interest or fees in respect thereof, may be paid in cash unless and until all other DIP Facility Obligations owed to the DIP Agent and the DIP Lenders (other than the DIP Lenders under the Sponsor Tranche) have been paid in full in cash.  Holders of the Sponsor Tranche shall have no voting rights hereunder or under the DIP Facility Documents and shall be disregarded for the purpose of determining Required Lenders. The parties providing the Sponsor Tranche and the DIP Agent and the DIP Lenders shall enter into a participation agreement evidencing the foregoing in order to implement the foregoing and as a condition precedent to any forbearance and funding of the Sponsor Tranche. Upon the occurrence of any Default other than a Specified Default, or other than a Default or Event of

31

Default arising under Section 7.10(c) of the DIP Credit Agreement, the forbearance by the DIP Agent and the DIP Lenders shall be automatically terminated and all Defaults and Events of Default shall continue to exist (unless cured or waived in accordance with the terms of the DIP Facility Documents) and the DIP Agent shall not be limited in exercising any of its or a DIP Lender's rights and remedies hereunder or in accordance with the DIP Facility Documents. Notwithstanding the foregoing agreement to forbear, the DIP Agent may provide the notice referred to in Section 8.02 of the DIP Credit Agreement solely to commence the notice period specified therein, and shall not be required to provide any further notice upon termination of such forbearance period.

28. <u>Cash Collateral Termination</u>. Notwithstanding anything herein to the contrary, the Debtors', the DIP Agent's and the DIP Lenders' right to use the Prepetition Agent's and the Prepetition Lenders' Cash Collateral under this Final Order shall terminate only upon termination of the DIP Facility and final payment in full in cash of the DIP Facility Obligations.

29. <u>Collateral Rights</u>. Until all of the DIP Facility Obligations shall have been indefeasibly paid and satisfied in full in immediately available funds and without further order of the Court:

(a) In the event that any party who holds a lien or security interest in any of the Collateral that is junior and/or subordinate to the liens and claims of the DIP Agent and the DIP Lenders in such Collateral receives or is paid proceeds of the Collateral prior to the indefeasible payment and satisfaction in full of all DIP Facility Obligations, such junior or subordinate lienholder shall be deemed to have received, and shall hold, such Collateral proceeds in trust for the DIP Agent and the DIP Lenders and shall immediately turnover to the DIP Agent

32

such proceeds for application to the DIP Facility Obligations in accordance with the DIP Facility Documents and/or this Final Order;

(b) In addition to the rights set forth in paragraph 15 and in lieu of requiring the Debtors to obtain any account control agreements with respect to their accounts on or prior to the Closing Date, the Prepetition Agent is hereby ordered to continue to take direction from the DIP Agent with respect to the Debtors' deposit accounts, including notifying any bank subject to an account control agreement to exercise the rights and remedies of a secured party thereunder, such that the DIP Agent shall have "control" over such accounts as set forth in the applicable Uniform Commercial Code until the DIP Facility Obligations are finally paid in full in cash. In addition, the Prepetition Agent is hereby ordered to continue to take direction from the DIP Agent with respect to any landlord lien waivers, collateral access agreements or any similar instruments such that the DIP Agent shall have all of the rights and remedies of a secured party thereunder.

(c) The Prepetition Agent and the Prepetition Lenders are hereby ordered to continue to refrain from taking any action with respect to the Debtors or any of their assets until the DIP Facility Obligations are finally paid in full in cash.

(d) Upon the acceleration of the DIP Facility Obligations following an Event of Default, and subject to the DIP Agent providing the notice required by this Final Order, in connection with a liquidation of any of the Collateral, the DIP Agent and the DIP Lenders (or any of their employees, agents, consultants, contractors or other professionals) shall have the right, at the cost and expense of the Debtors to be added to the DIP Facility Obligations, to: (i) enter upon, occupy and use any personal property, fixtures and equipment owned or leased by the Debtors and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any

33

other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses. If the DIP Agent or the DIP Lenders exercise any remedies provided for in this paragraph, the DIP Agent and the DIP Lenders will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that the DIP Agent or any DIP Lender actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that the DIP Agent or any DIP Lender actually occupies or uses such assets or properties); and

(e)    Upon the acceleration of the DIP Facility Obligations following an Event of Default, and subject to the DIP Agent providing the notice required by this Final Order, as well as three (3) business days notice to any Debtor's real property lessor of the DIP Agent's or any DIP Lender's intention to enter onto or into such lessor's leased premises to remove or otherwise dispose of any Collateral located at such leased premises in accordance with the terms of this paragraph, the DIP Agent and the DIP Lenders shall have the right, following the expiration of such two (2) business days notice period described in this paragraph, to enter onto or into such leased premises for the purpose of removing the Collateral from the leased premises or selling such Collateral at the leased premises, in each case subject to the applicable terms of such Debtor's lease arrangements with such lessor to the extent enforceable or effective under the Bankruptcy Code and subject to the rights of the DIP Agent and the DIP Lenders provided for herein. Subject to the following sentence, the Debtors shall remain obligated to perform any obligation and to pay any rent and additional rent due under the terms of their leases at all times, including during the period commencing upon the DIP Agent and the DIP Lenders obtaining the right to enter the Debtors' leased premises in accordance with this paragraph. Nothing herein

34

shall require the DIP Agent or the DIP Lenders to assume any lease or cure any defaults as a condition to the rights afforded in this paragraph.

30.    Reservation of Rights. Entry of this Final Order shall not be deemed to prejudice any and all rights, remedies, claims and causes of action the DIP Agent or the DIP Lenders may have against third parties, and shall not prejudice the rights of the DIP Agent and the DIP Lenders from and after the entry of this Final Order to seek any other relief in the Debtors' Chapter 11 cases. Entry of this Final Order shall not in any way constitute: (a) a preclusion or a waiver of any right of the DIP Agent or the DIP Lenders to file, or to prosecute if already filed, a motion for relief from stay, a motion or request for other relief, including but not limited to any adversary proceeding; (b) agreement, consent, or acquiescence to the terms of any plan of reorganization by virtue of any term or provision of this Final Order; (c) a preclusion or waiver to assert any other rights, remedies or defenses available to the DIP Agent or the DIP Lenders, or to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses and opportunities to respond being specifically reserved by the DIP Agent or the DIP Lenders; or (d) a preclusion, waiver or modification of any rights or remedies that the DIP Agent or the DIP Lenders have against any other person or entity.

31.    Restrictions on Additional Use of Cash Collateral, Additional Financing. All postpetition advances and other financial accommodations under the DIP Credit Agreement and the other DIP Facility Documents are made in reliance on this Final Order and in the event that an order is entered at any time in the Debtors' Chapter 11 cases or in any subsequently converted case under Chapter 7 of the Bankruptcy Code (other than the Final Order) which (a) authorizes the use of cash collateral of the Debtors in which the DIP Lenders has an interest or the sale, lease, or other disposition of property of the Debtors' estates in which the DIP Agent and the DIP

35

Lenders has a lien or security interest, except as expressly permitted hereunder or in the DIP
Facility Documents, or (b) authorizes under Bankruptcy Code § 364 the obtaining of credit or the
incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien
or security interest in property in which the DIP Agent and the DIP Lenders holds a lien or
security interest, or which is entitled to priority administrative claim status which is equal or
superior to that granted to the DIP Agent and the DIP Lenders herein; then, in each instance
described in clauses (a) and (b) of this paragraph, (i) the DIP Agent and the DIP Lenders, as is
required by the DIP Credit Agreement, shall first have given their express prior written consent
thereto, no such consent being implied from any other action, inaction or acquiescence by the
DIP Agent or the DIP Lenders, or (ii) such other order shall require that all DIP Facility
Obligations first shall be indefeasibly paid in full in cash in immediately available funds. The
liens and security interests granted to or for the benefit of the DIP Agent and the DIP Lenders
hereunder and the rights of the DIP Agent or the DIP Lenders pursuant to this Final Order and
the DIP Facility Documents with respect to the DIP Facility Obligations and the Collateral are
cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of
reorganization of the Debtors.

32.     Proofs of Claim. The DIP Agent and the DIP Lenders shall not be required to file
proofs of claim in any of the Chapter 11 cases for any claim allowed herein.

33.     No Obligation to Extend Credit. The DIP Agent and the DIP Lenders shall not
have any obligation to make any further loan or advance under the DIP Facility Documents
unless all of the conditions precedent to the making of such extension of credit under the DIP
Facility Documents, the Interim Order and this Final Order, as applicable, have been satisfied in
full or waived by the DIP Lenders in accordance with the DIP Facility Documents.

36

34.     Limitation of Liability.  Nothing in the Interim Order, this Final Order or the DIP Facility Documents shall in any way be construed or interpreted to impose, or allow the imposition upon the DIP Agent or the DIP Lenders of, any liability for any claims arising from the prepetition or postpetition activities by the Debtors in the operation of its business or in connection with its restructuring efforts.

35.     No Modification or Stay of Final Order.  If any or all of the provisions of this Final Order or the DIP Facility Documents are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtors to the DIP Agent and the DIP Lenders prior to the effective date of such modification, vacation or stay, or (b) the validity or enforceability of any security interest, lien, or priority authorized or created hereunder or pursuant to the DIP Facility Documents, as applicable.  Notwithstanding any such modification, vacation or stay, any indebtedness, obligations or liabilities incurred by the Debtors to the DIP Agent and the DIP Lenders prior to the effective date of such modification, vacation or stay shall be governed in all respects by the original provisions of this Final Order; and the DIP Agent and the DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to all such indebtedness, obligations and/or liabilities.  The indebtedness, obligations and/or liabilities of the Debtors to the DIP Agent and the DIP Lenders under this Final Order and/or the DIP Facility Documents shall not be discharged by the entry of an order approving a sale of substantially all of the Debtors' assets pursuant to Bankruptcy Code § 363, or an order confirming a plan of reorganization in the Debtors' bankruptcy cases pursuant to Bankruptcy Code § 1141(d)(4) or otherwise, unless and until all indebtedness, obligations and liabilities of the Debtors to the DIP Agent and the DIP Lenders are indefeasibly paid in full in cash in

37

accordance with the terms and conditions of the DIP Facility Documents prior to or concurrently with the entry of such order. No indebtedness, obligation or liability owed by the Debtors to the DIP Agent and the DIP Lenders under this Final Order or the DIP Facility Documents, prior to the effective date of any modification, vacation or stay of this Final Order can, as a result of any subsequent order in these Chapter 11 cases, or in any superseding case, be subordinated, lose its lien priority or super-priority administrative claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Agent and the DIP Lenders under this Final Order and/or the DIP Facility Documents.

36.     Good Faith. The terms of the financing arrangements among the Debtors, the DIP Agent and the DIP Lenders have been negotiated in good faith and at arms' length among the Debtors, the DIP Agent and the DIP Lenders and any loans, advances or other financial accommodations which are made or caused to be made to the Debtors by the DIP Agent and the DIP Lenders pursuant to the DIP Facility Documents are deemed to have been made and provided in good faith, as the term "good faith" is used in Bankruptcy Code § 364(e), and shall be entitled to the full protection of Bankruptcy Code § 364(e) in the event that this Final Order or the DIP Facility Documents or any provisions are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the consent of the DIP Agent and the DIP Lenders.

37.     Conflicting Provisions. Unless otherwise provided in this Final Order, to the extent the terms and conditions of the DIP Facility Documents or the Motion are in conflict with the terms and conditions of this Final Order, the terms and conditions of this Final Order shall control.

38

38.     Effectiveness.  This Final Order shall constitute findings of fact and conclusions of law, and notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Final Order shall (a) be immediately enforceable, and (b) not be stayed absent the grant of such stay under Bankruptcy Rule 8005 after a hearing upon notice to the Debtors, the DIP Agent and the DIP Lenders.

Dated: Wilmington, Delaware

_Aug 13_, 2009

_____

The Honorable Kevin J. Carey
United States Bankruptcy Judge

39