**Exhibit 1 to the Bidding Procedures Order**

**(Bidding Procedures)**

## BIDDING PROCEDURES[1]

By the Bidding Procedures Motion dated August 19, 2009, Lang Holdings, Inc., and its affiliated debtors and debtors in possession (collectively, the "Debtors"),[2] sought approval of, among other things, the procedures through which they will determine the highest or otherwise best price for the sale of substantially all of their assets (the "Acquired Assets") described in the Asset Purchase Agreement and related transactions (the "Transactions"),[3] by and between LHI Enterprises, Inc. ("LHI Enterprises") and the Debtors, dated as of August 19, 2009 (the "Asset Purchase Agreement"), a copy of which is attached to the proposed Sale Order as Exhibit 1, attached as Exhibit B to the Bidding Procedures Motion.

On September 4, 2009, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to determine the highest or otherwise best price for the Acquired Assets through the process and procedures set forth below (the "Bidding Procedures").

### Marketing Process

*Contact Parties*

The Debtors, in consultation with their investment banker Duff & Phelps Securities, LLC ("Duff & Phelps"), have developed a list of parties who the Debtors believe may potentially be interested in and who the Debtors reasonably believe would have the financial resources to consummate a competing transaction to that of LHI Enterprises (a "Competing Transaction"), which list includes both potential strategic investors and potential financial investors (each, individually, a "Contact Party", and collectively, the "Contact Parties"). The Debtors and Duff & Phelps are already in the process of contacting the Contact Parties to explore their interest in pursuing a Competing Transaction. The Contact Parties may include parties whom the Debtors or their advisors have previously contacted regarding a transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute to each Contact Party an "Information Package," comprising:

(a)  A cover letter;

(b)  A copy of these Bidding Procedures; and

(c)  A copy of a confidentiality agreement; and

(d)  The Bidding Procedures Motion.

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures (the "Bidding Procedures Motion").

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Lang Holdings, Inc. (9551); Turner Acquisition, Inc. (2115); Avalanche Publishing Acquisition, Inc. (3038); The Lang Companies, LLC (9182); Avalanche Publishing, Inc. (9793); and The Lang Store, Ltd. (2398). The mailing address of each of the Debtors is 514 Wells Street, Delafield, Wisconsin 53018.

[3] Such Transactions also involve certain transactions with Sun Finance LLC and Catterton Partners V, LP and Catterton Partners V Offshore, LP, as described in the Asset Purchase Agreement.

*Access to Diligence Materials*

To participate in the bidding process and to receive access to due diligence (the "Diligence Materials"), a party must submit to the Debtors an executed Confidentiality Agreement.

A party who qualifies for access to Diligence Materials shall be a "Preliminary Interested Investor." All due diligence requests must be directed to Duff & Phelps Securities, LLC (Attn: Joshua Benn), 55 East 52nd Street, 31st Floor, New York, NY 10055.

For any Preliminary Interested Investor who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold any Diligence Materials that the Debtors, after consultation with the Committee, determine are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Investor.

## Auction Qualification Process

To be eligible to participate in the Auction (defined below), each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtors, in consultation with the Committee, to satisfy each of the following conditions:

(a) Good Faith Deposit: Each Bid must be accompanied by a deposit in the amount of $2,500,000 to an interest bearing escrow account to be identified and established by the Debtors (the "Good Faith Deposit").

(b) Same or Better Terms: The Bid must be on terms that, in the Debtors' business judgment, in consultation with the Committee, are substantially the same or better than the terms of the Asset Purchase Agreement. A Bid must include executed transaction documents pursuant to which the Bidder proposes to effectuate the Competing Transaction (the "Modified Asset Purchase Agreement"). A Bid shall include a copy of the Asset Purchase Agreement marked to show all changes requested by the Bidder (including those related to purchase price); provided, however, that the terms of the Modified Asset Purchase Agreement are substantially similar, the same or better than the terms of the Asset Purchase Agreement. A Bid must propose a Competing Transaction involving substantially all of the Debtors' assets or operations. A Bid must propose a purchase price equal to or greater than (i) the Credit Bid Amount and the Cure Amounts in cash; (ii) the dollar value of the Breakup Fee in cash, (iii) the dollar value of the Expense Reimbursement in cash, and (iv) $250,000 in cash. The Competing Transaction must provide for the immediate payment of the Breakup Fee and Expense Reimbursement to LHI Enterprises in cash from the proceeds of the purchase price of such Bid. The Competing Transaction Documents shall also identify any executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it pursuant to the Competing Transaction.

(c) Corporate Authority: The Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; provided, however, that if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors, in consultation with the Committee, of the approval of the Competing Transaction by the equity holder(s) of such Bidder.

(d) Proof of Financial Ability to Perform: The Bid must include written evidence that the Debtors reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such Competing Transaction. Such information must include, *inter alia*, the following:

(i) contact names and numbers for verification of financing sources;

(ii) evidence of the Bidder's internal resources and proof of unconditional debt or equity funding commitments, from a recognized banking institution or other source in the amount of the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of the cash portion of such Bid, in each case, as are needed to close the Competing Transaction;

(iii) the Bidder's current financial statements (audited if they exist); and/or

(iv) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating and in accordance with the Asset Purchase Agreement that such Bidder has the ability to close the Competing Transaction; provided, however, that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors and the Committee, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(e) Contingencies: A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the Closing.

(f) Irrevocable: A Bid must be irrevocable through the Auction, provided, however, that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

(g) Bid Deadline: Regardless of when a party qualifies as a Preliminarily Interested Investor, the following parties must receive a Bid in writing, on or before September 23, 2009 at 4:00 p.m. (prevailing Eastern Time) or such earlier date as may be agreed to by the Debtors (the "Bid Deadline"): (i) the Debtors, Lang Holdings, Inc., 514 Wells Street, Delafield, Wisconsin 53018, Attn: Laurie Gilner; (ii) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391, Attn: Michael R. Nestor and David R. Hurst; (iii) counsel to the Official Committee of Unsecured Creditors (the "Committee"), Lowenstein Sandler PC, 65 Livingston Ave., Roseland, New Jersey 07068, Attn: Bruce Buechler and Timothy R. Wheeler; (iv) counsel to Sun Finance and LHI Enterprises, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Jeremy Liss and David Agay; (v) Duff & Phelps Securities, LLC, 55 East 52nd Street, 31st Floor, New York, New York 10055, Attn: Joshua K. Benn and Eric R. Williams and (vi) counsel to Catterton, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, Attn: Eunu Chun.

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "Qualified Bid," and such Bidder shall constitute a "Qualified Bidder." Notwithstanding anything herein to the contrary, the Asset Purchase Agreement submitted by LHI Enterprises shall be deemed a Qualified Bid, which shall remain open and irrevocable until the closing of the Sale related to the Acquired Assets to the Successful Bidder (defined herein). In accordance with the Bidding Procedures, LHI Enterprises will receive copies of all Bids simultaneously with the Debtors. Upon request to the Debtors, other Qualified Bidders will be able to receive copies of all other Qualified Bids received. The Debtors shall inform counsel to LHI Enterprises whether the Debtors will consider such Bids to be Qualified Bids within one (1) calendar day after the Bid Deadline.

## Auction

If more than one Qualified Bid is received by the Bid Deadline (other than the Asset Purchase Agreement), the Debtors will conduct an auction (the "Auction") to determine the highest and best Qualified Bid. This determination shall be made in consultation with the Committee and shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estates, which may include any or all of the following: (i) the amount and nature of the consideration, (ii) the proposed assumption of any liabilities, if any, (iii) the number, type and nature of any changes to the Asset Purchase Agreement requested by each Bidder; (iv) the extent to which such modifications are likely to delay closing of the sale of the Acquired Assets and the cost to

3

Debtors of such modifications or delay; (v) the total consideration to be received by the Debtors; (vi) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (vii) the net benefit to the estates, taking into account LHI Enterprises' rights to the Breakup Fee and Expense Reimbursement, (viii) the impact of the transaction on any actual or potential litigation; and (ix) the net after-tax consideration to be received by the Debtors' estates (collectively, the "Bid Assessment Criteria"). If no Qualified Bid (other than the Asset Purchase Agreement) is received by the Bid Deadline, the Debtors may determine not to conduct the Auction.

The Auction shall take place at 10:00 a.m. (prevailing Eastern Time) on September 28, 2009, at the offices of Debtors' counsel, Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, or such other place and time as the Debtors shall notify all Qualified Bidders, including LHI Enterprises, the Committee, and other invitees in accordance with the Asset Purchase Agreement. The Auction shall be conducted according to the following procedures:

    (a)    The Debtors Shall Conduct the Auction.

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline, (such Qualified Bid the "Auction Baseline Bid"). Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or sale of the Acquired Assets.

All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids. LHI Enterprises, Sun Finance and Catterton (collectively or individually), as applicable, shall be permitted to credit bid the full amount of the Expense Reimbursement (as defined herein) and the Breakup Fee (as defined herein) pursuant to any Overbid in connection with each round of bidding. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Auction Baseline Bid and all Overbids.

    (b)    Terms of Overbids.

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

        (i)    Minimum Overbid Increment.

Any Overbid after the Auction Baseline Bid shall be made in increments of at least $250,000. Additional consideration in excess of the amount set forth in the Auction Baseline Bid may include only cash or, solely with respect to Sun Finance and Catterton (collectively or individually), as applicable, a credit bid under section 363(k) of the Bankruptcy Code of its allowed secured claims, and, in the case of a Bid by LHI Enterprises, Sun Finance and Catterton (collectively or individually), as applicable, a further credit bid of the Expense Reimbursement and the Breakup Fee.

        (ii)    Remaining Terms are the Same as for Qualified Bids.

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid.

To the extent not previously provided (which shall be determined by the Debtors, in consultation with the Committee), a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Bidder's ability to close the Competing Transaction proposed by such Overbid.

4

(iii)    Announcing Overbids.

The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtors' estates based on, *inter alia*, the Bid Assessment Criteria.

(iv)    Consideration of Overbids.

The Debtors reserve the right, in their reasonable business judgment and in consultation with the Committee, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtors and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment may require, that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Competing Transaction at the prevailing Overbid amount.

(c)    Backup Bidder.

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid at the Auction, as determined by the Debtors in the exercise of their business judgment and in consultation with the Committee, shall be required to serve as a backup bidder (the "Backup Bidder"). The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern Time) on the date that is twenty (20) days after the date of the Auction (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder (defined herein). Following the Sale Hearing, if the Successful Bidder (defined herein) fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder (defined herein), the Debtors may designate the Backup Bidder to be the new Successful Bidder (defined herein), and the Debtors will be authorized, but not required, to consummate the transaction, with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder (defined herein). The deposit of the Backup Bidder shall be held by the Debtors until the earlier of 24 hours after (a) the closing of the transaction with the Successful Bidder (defined herein) and (b) the Outside Backup Date.

(d)    Additional Procedures.

The Debtors, after consultation with the Committee, may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures or the Asset Purchase Agreement.

(e)    Consent to Jurisdiction as Condition to Bidding.

LHI Enterprises, all Qualified Bidders and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Asset Purchase Agreement, the Auction or the construction and enforcement of any Competing Transaction Documents.

(f)    Closing the Auction.

The Auction shall continue until there is only one Qualified Bid that the Debtors determine in their reasonable business judgment, after consultation with their financial and legal advisors and the Committee, is the highest and best Qualified Bid at the Auction (the "Successful Bid" and the Bidder submitting such Successful Bid, the "Successful Bidder"). In making this decision, the Debtors, in consultation with their financial and legal advisors and the Committee, shall consider any factors the Debtors reasonably deem relevant to the value of the

Qualified Bid to the estates, which may include any or all of the Bid Assessment Criteria. The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid and the Successful Bidder has submitted fully executed sale and transaction Documents memorializing the terms of the Successful Bid.

The Debtors shall not consider any Bids submitted after the conclusion of the Auction.

### Bid Protections

LHI Enterprises is entitled to: (i) the Breakup Fee in the amount of $750,000; and (ii) the Expense Reimbursement up to $500,000, in each case, pursuant to the terms of the Asset Purchase Agreement.

### Sale Hearing

The Debtors will seek a hearing (the "Sale Hearing") on or before September 30, 2009, at which the Debtors will seek approval of the Transactions with the Successful Bidder. Objections, if any, to the sale of the Acquired Assets to the Successful Bidder and the Transactions contemplated by the Asset Purchase Agreement must: (a) be in writing and filed with the Court no later than 4:00 p.m. (prevailing Eastern time) on September 23, 2009 and be served such that they are actually received by (v) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391, Attn: Michael R. Nestor and David R. Hurst; (w) counsel to the Official Committee of Unsecured Creditors (the "Committee"), Lowenstein Sandler PC, 65 Livingston Ave., Roseland, New Jersey 07068, Attn: Bruce Buechler and Timothy R. Wheeler; (x) counsel to Sun Finance and LHI Enterprises, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Jeremy Liss and David Agay; (y) counsel to Catterton, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, Attn: Eunu Chun; (z) the Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801, Attn: David Buchbinder.

### Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Court. The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of 24 hours after (i) the closing of the transaction with the Successful Bidder (defined herein) and (ii) the Outside Backup Date. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

### Reservation of Rights

Except as otherwise provided in the Asset Purchase Agreement or the Sale Order, the Debtors further reserve the right as they may reasonably determine to be in the best interest of their estates, in consultation with the Committee, to: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (iv) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) remove some or all of the Acquired Assets from the Auction; (vi) waive terms and conditions set forth herein with respect to all potential bidders; (vii) impose additional terms and conditions with respect to all potential bidders; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (x) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice.