## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LANG HOLDINGS, INC., | ) Case No. 09-12543 (KJC) |
| a Delaware Corporation, et al.,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Ref. Docket Nos. 120, 195, 213, 225 & 269 |

## ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING THE ASSET PURCHASE AGREEMENT; (III) APPROVING PROCEDURES AND RIGHTS RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the debtors and debtors in possession in the above captioned cases (collectively, the "Debtors") pursuant to sections 105(a), 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (the "Order") (a) approving the sale of substantially all of the Debtors' assets free and clear of liens, claims, encumbrances and other interests, with such sale to be consummated in accordance with the terms and conditions of the Asset Purchase Agreement (as defined below), (b) authorizing and approving the execution and delivery of the Asset Purchase Agreement (as defined below); (c) approving procedures and rights related to the assumption and assignment of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Lang Holdings, Inc. (9551); Turner Acquisition, Inc. (2115); Avalanche Publishing Acquisition, Inc. (3038); The Lang Companies, LLC (9182); Avalanche Publishing, Inc. (9793); and The Lang Store, Ltd. (2398). The mailing address of each of the Debtors is 514 Wells Street, Delafield, Wisconsin 53018.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Asset Purchase Agreement (hereinafter defined).

certain executory contracts and unexpired leases; and (d) granting related relief, all as more fully described in the Motion; and the Debtors having determined that the highest and otherwise best offer for Acquired Assets (as defined in the Asset Purchase Agreement) was made by LHI Enterprises, Inc. (the "Purchaser") (as part of the Transactions (as defined herein) contemplated by the Asset Purchase Agreement, including with respect to the sale of the GrandCo Assets (as defined herein) to Sun Lang Finance, LLC ("Sun Finance") and Catterton Partners V, LP and Catterton Partner V Offshore, LP (collectively, "Catterton," and together with the Purchaser and Sun Finance, the "Purchasing Entities")) in the form of the Asset Purchase Agreement by and among LHI Enterprises, Inc., Sun Lang Finance, LLC with respect to Sections 3.2, 4.2(b)(i) and 4.5 of the Asset Purchase Agreement and Catterton Partners V, LP and Catterton Partner V Offshore, LP with respect to Sections 3.2, 4.2(b)(ii) and 4.6 of the Asset Purchase Agreement, on the one hand and Lang Holdings, Inc., Turner Acquisition, Inc., Avalanche Publishing Acquisition, Inc., Avalanche Publishing, Inc., The Lang Companies, LLC and the Lang Store, Ltd., on the other hand, dated as of August 19, 2009 and amended as of September 3, 2009, September 18, 2009 and September 25, 2009, a copy of which is attached hereto as Exhibit 1, and the exhibits and schedules thereto (each as has been or may be further amended or supplemented from time to time, collectively, the "Asset Purchase Agreement"); and the Court having conducted a hearing on September 30, 2009 (the "Sale Hearing") to consider the approval of the sale of the Acquired Assets and consummation of the Transactions (as defined herein) pursuant to the terms and conditions of the Asset Purchase Agreement, and the Court having considered: (i) the Motion and any objections thereto, (ii) the proposed sale of the Acquired Assets by Debtors to the Purchaser pursuant to the Asset Purchase Agreement and the Transactions (as defined herein) contemplated thereby, (iii) the arguments of counsel made, and evidence adduced, related thereto, and (iv)

2

the full record in these chapter 11 cases, including the record related to the hearing to consider the Bidding Procedures Order and the Sale Hearing held before this Court; all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Asset Purchase Agreement and sale of the Acquired Assets and other transactions contemplated by the Asset Purchase Agreement; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; that reasonable and adequate notice of the Motion, the Bidding Procedures Order, the Transactions (as defined herein) contemplated by the Asset Purchase Agreement, this Order and the Sale Hearing have been provided to all persons required to be served in accordance with the Bankruptcy Code and the Bankruptcy Rules; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND, CONCLUDED AND DETERMINED THAT:[3]**

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     This Court has jurisdiction over the Motion and over the property of Debtors, including the Acquired Assets to be sold and the GrandCo Assets (as defined herein),

---

[3]     All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are herby incorporated herein to the extent not inconsistent herewith.

transferred and conveyed pursuant to the Asset Purchase Agreement, and the Transactions (as defined herein) contemplated by the Asset Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Motion in this district and Court is proper under 28 U.S.C. §§ 1408 and 1409.

D. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

E. The Acquired Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. In accordance with the terms of the Asset Purchase Agreement and at the time specified in Asset Purchase Agreement, the GrandCo Assets will constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

F. The statutory bases for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.

G. On July 16, 2009 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or this "Court"). Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

4

H.     This Court entered the Bidding Procedures Order on September 4, 2009 [Docket No. 195], (i) establishing bidding and auction procedures (the "Bidding Procedures"); (ii) approving proposed bid protections to the Purchaser in accordance with the Asset Purchase Agreement; (iii) scheduling an auction and the Sale Hearing to consider the sale of the Debtors' assets, (iv) permitting credit bidding pursuant to section 363(k) of the Bankruptcy Code; (v) establishing procedures for noticing and determining cure amounts related to the Debtors' executory contracts and unexpired leases; (vi) approving the form and manner of notice of all procedures, protections, schedules and agreements, and (vii) granting certain related relief.

I.     Actual written notice of, and a reasonable opportunity to object or be heard with respect to, the Sale Hearing, the Auction, the Motion and the Transactions (as defined herein) has been afforded to all known interested entities, including, but not limited to the following parties: (i) all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest or encumbrance of record against any all or any portion of the Acquired Assets; (ii) the Office of the United States Trustee; (iii) the Environmental Protection Agency; (iv) all applicable federal, state and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the sale of the Acquired Assets, may have claims, contingent or otherwise, in connection with the Debtors' ownership of the Acquired Assets or have any known interest in the relief requested by the Motion; (v) the state and local environmental agencies in the jurisdictions where the Debtors own or lease real property; (vi) counsel to the Purchaser; (vii) counsel to the prepetition and postpetition secured lenders; (viii) the United States Attorney's office; (ix) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (x) counsel to the Official Committee of Unsecured Creditors; (xi) all parties to any litigation

involving the Debtors; (xii) all of the Debtors' current employees and former employees, if any, who were terminated immediately prior to the commencement of these cases, (xiii) all counterparties to any executory contract or unexpired lease of the Debtors; (xiii) all other known creditors and interest holders of Debtors; and (xiv) all potential bidders previously identified or otherwise known to the Debtors.

J.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sales process, including, without limitation, approval and authorization to serve the Sale Notice (as defined in the Bidding Procedures Order).

K.      The Sale Notice (as defined in the Bidding Procedures Order) provided all interested parties with timely and proper notice of the Transactions (as defined herein) contemplated by the Asset Purchase Agreement, the Sale Hearing and the Auction.

L.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing and the Transactions (as defined herein) has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtors also have complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing and the Transactions (as defined herein) required by the Bidding Procedures Order, including with respect to notice of the assumption, sale and assignment of each Assumed Executory Contract. Notice of the Sale Hearing, the Auction, the Motion and the sale of the Acquired Assets was also published in *The Wall Street Journal* on September 14, 2009. The notices described above were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing or the Transactions (as defined herein) contemplated by the Asset Purchase Agreement is required.

M.    The disclosures made by the Debtors concerning the Asset Purchase Agreement, the Auction, the Transactions (as defined herein) contemplated by the Asset Purchase Agreement and the Sale Hearing were good, complete and adequate.

N.    The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, proposed and executed in good faith as a result of arm's length negotiations between the Debtors and the Purchasing Entities, and were substantively and procedurally fair to all parties.

O.    The Debtors conducted the sale and auction process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order. The sale and auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Acquired Assets.

P.    No bids were submitted on or before the Bid Deadline (as defined in the Bidding Procedures Order), other than the offer submitted by Purchaser pursuant to the Asset Purchase Agreement. On September 23, 2009, the Debtors filed a notice of cancellation of auction, indicating that no other bids were received and canceling the auction, in accordance with the Bidding Procedures Order [Docket No. 253].

Q.    The Asset Purchase Agreement contemplates a multi-step transaction pursuant to which the Purchaser (to which its indirect parent corporation ("GrandCo") has contributed certain of its stock and a promissory note issued by GrandCo to the Purchaser (collectively, the "GrandCo Assets, and together with the Acquired Assets, the "Transaction Acquired Assets")) will acquire the Acquired Assets and Assumed Obligations of the Debtors in exchange for the GrandCo Assets. Sequentially, in the next step, Sun Finance and Catterton

7

shall immediately purchase the GrandCo Assets from the Debtors in exchange for the Credit Bid Amount. The sale of the Debtors assets and any related transactions, including, without limitation, those described in this paragraph Q and Section 3.1 and 3.2 of the Asset Purchase Agreement shall be referred to herein collectively as the "<u>Transactions</u>."

R.     The Asset Purchase Agreement and the Transactions contemplated thereby constitute the highest and best offer for the Acquired Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

S.     The Asset Purchase Agreement and the Transactions contemplated thereby represent a fair and reasonable offer to purchase the Acquired Assets under the circumstances of the chapter 11 cases. No other entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Purchasing Entities.

T.     Approval of the Motion and the Asset Purchase Agreement and the consummation of the Transactions contemplated thereby is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

U.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the sale of the Acquired Assets and Transactions outside the ordinary course of business. Such business reasons include, but are not limited to, the following (i) the Asset Purchase Agreement constitutes the highest and best offer for the Acquired Assets; (ii) the Asset Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Acquired Assets on a going concern basis and

avoid decline and devaluation of the Acquired Assets; and (iii) any other transaction, including pursuant to a plan of reorganization, would not have yielded as favorable an economic result.

V.     The Purchasing Entities are purchasing the Acquired Assets or the GrandCo Assets, as applicable, in good faith and are good faith buyers within the meaning of section 363(m) of the Bankruptcy Code, and are therefore entitled to the full protections of that provision, and otherwise have proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (i) the Purchasing Entities recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Purchasing Entities complied with the provisions in the Bidding Procedures Order; (iii) the Purchasing Entities agreed to subject their bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Purchasing Entities and other agreements or arrangements entered into by the Purchasing Entities in connection with the Transactions have been disclosed; (v) the Purchasing Entities have not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vi) the negotiation and execution of the Asset Purchase Agreement, including all Transactions contemplated thereby, was at arms' length and in good faith.

W.     The Debtors and the Purchasing Entities have not engaged in any conduct that would permit the Asset Purchase Agreement or the sale of the Acquired Assets or the Transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code.

X.     The consideration provided by Purchasing Entities pursuant to the Asset Purchase Agreement is fair and adequate and constitutes reasonably equivalent value and fair

9

consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

Y.     By consummating the sale pursuant to the Transactions contemplated by the Asset Purchase Agreement, the Purchasing Entities are not a mere continuation of the Debtors or their estates and there is no continuity between the Purchasing Entities and Debtors. The Purchasing Entities are not holding themselves out to the public as a continuation of the Debtors. The Purchasing Entities are not successors to the Debtors or their estates and the Transactions do not amount to a consolidation, merger or de facto merger of the Purchasing Entities and the Debtors.

Z.     The sale of the Acquired Assets and the Transactions contemplated by the Asset Purchase Agreement outside a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors. The sale does not constitute a *sub rosa* plan.

AA.     The Debtors, acting by and through their existing agents, representatives and officers, have full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the Transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement.

BB.     The Purchaser has not agreed to assume and shall have no obligations with respect to any liabilities of the Debtors or their subsidiaries or Affiliates other than the Assumed Obligations expressly set forth in the Asset Purchase Agreement. Sun Finance and Catterton

10

have not agreed to assume and shall have no obligations with respect to any liabilities of the Debtors or their Affiliates.

CC.     The transfer of each of the Acquired Assets to the Purchaser will be as of the Closing Date a legal, valid and effective transfer of such assets, and vests or will vest the Purchaser with all right, title and interest of the Debtors to the Acquired Assets free and clear of all Interests or Claims (as defined below in paragraph 8) accruing, arising or relating thereto any time prior to the Closing Date, except for any Assumed Obligations under the Asset Purchase Agreement.

DD.     The transfer of the GrandCo Assets to Sun Finance and Catterton will be as of the Closing Date a legal, valid and effective transfer of such assets, and vests or will vest Sun Finance and Catterton with all right, title and interest of the Debtors to the GrandCo Assets free and clear of all Interests or Claims (as defined below in paragraph 8).

EE.     The Debtors may sell the Transaction Acquired Assets free and clear of all Interests or Claims (as defined below in paragraph 8) against the Debtors, their estates or any of the Transaction Acquired Assets (except for the Assumed Obligations of the Purchaser) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests or Claims against the Debtors, their estates or any of the Transaction Acquired Assets who did not object, or who withdrew their objections, to the Transactions or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Interests or Claims who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Interests or Claims, if any, in each instance against the Debtors, their estates or any of the Transaction Acquired Assets, attach to the proceeds of the Transactions ultimately

11

attributable to the Transaction Acquired Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Transactions, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

FF.    If the sale of the Transaction Acquired Assets to the Purchasing Entities were not free and clear of all Interests or Claims (as defined below in paragraph 8), or if the Purchasing Entities would, or in the future could, be liable for any of the Interests or Claims, the Purchasing Entities would not have entered into this Asset Purchase Agreement and would not consummate the sale or the Transactions contemplated by the Asset Purchase Agreement, thus adversely affecting the Debtors, their estates and their creditors.

GG.    The assumption and assignment of the Assumed Executory Contracts, including any Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement, if any, pursuant to the terms of this Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

HH.    The Debtors and Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), (B) and 365(f), in connection with the sale and assumption and assignment of the Assumed Executory Contracts to the extent provided under the Asset Purchase Agreement, including any Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement, if any. The Purchaser is able to demonstrate adequate assurance of future performance with respect to any Assumed Executory Contracts pursuant to section 365(b)(1)(C)

12

of the Bankruptcy Code, including any Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement. Except as provided by in the Asset Purchase Agreement, the Assumed Executory Contracts, including any Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement, are assignable notwithstanding any provisions contained therein to the contrary.

II.     To maximize the value of the Acquired Assets, it is essential that the closing of the Transactions occurs within the time constraints set forth in the Asset Purchase Agreement. Time is of the essence in consummating the Transactions.

JJ.     Sun Finance holds an allowed secured claim entitled to superpriority status in the aggregate amount of not less than $9.25 million plus any other amounts and obligations outstanding under the DIP Facility as of the Closing Date, which claim is not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, plus such additional amounts, including accrued interest with respect thereto and any fees, expenses costs and charges, all to the extent allowed under, and pursuant to, the DIP Credit Agreement and the DIP Order (the "DIP Claim"). Catterton holds an allowed secured claim in the aggregate amount of not less than $18.9 million, which claim is not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, plus such additional amounts, all to the extent allowed under, and pursuant to, the Pre-Petition Credit Agreement and the DIP Order (the "Prepetition Secured Claim," and together with the DIP Claim, the "Allowed Secured Claims"). On account of the Allowed Secured Claims, Sun Finance and Catterton are secured creditors of the Debtors, holding valid, binding, enforceable and perfected security interests in,

13

on and against the Debtors, their estates and property of the estates, arising in connection with, and pursuant to, that certain (i) DIP Credit Agreement and the DIP Order and (ii) Pre-Petition Credit Agreement and the DIP Order, as applicable. Pursuant to the Bidding Procedures Order, Sun Finance and Catterton were authorized to credit bid any or all such Allowed Secured Claims at the Auction under section 363(k) of the Bankruptcy Code.

KK.    Pursuant to the Asset Purchase Agreement and Bankruptcy Code sections 363(b) and 363(k), Sun Finance and Catterton credit bid in aggregate amount equal to $25 million, comprised of (i) the total amount of the DIP Claim and (ii) a portion of the Prepetition Secured Claim in an amount equal to the difference between the aggregate credit bid amount of $25 million and the amount of the DIP Claim, which credit bid was a valid and proper offer pursuant to the Bidding Procedures Order (collectively, the "Credit Bid").

LL.    Given all of the circumstances of the chapter 11 cases and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the Transactions constitute a reasonable and sound exercise of the Debtors' business judgment, are in the best interests of the Debtors, their estates, their creditors and other parties in interest and should be approved.

MM.    The consummation of the Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Transactions.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The relief requested in the Motion is granted and approved, and the Transactions contemplated thereby and by the Asset Purchase Agreement are approved as set forth in this Order.

2. Any and all objections and responses to the Motion that have not been withdrawn, waived, settled or resolved, and all reservations of rights included therein, are hereby overruled and denied.

3. Notice of the Motion, the Auction, the Sale Hearing and the Transactions contemplated by the Asset Purchase Agreement was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

**Approval of the Sale of the Acquired Assets**

4. The Purchaser's offer for the Acquired Assets, as embodied in the Asset Purchase Agreement (including with respect to all Transactions and the offer and sale of the GrandCo Assets to Sun Finance and Catterton), is the highest and best offer for the Acquired Assets and the Asset Purchase Agreement, including all other ancillary documents, and all of the terms and conditions thereof, and the Transactions contemplated thereby, including the Credit Bid by Sun Finance and Catterton, are hereby approved in all respects.

5. The sale of the Transaction Acquired Assets and the consideration provided by the Purchaser Entities under the Asset Purchase Agreement, including the amount provided pursuant to the Credit Bid, is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and other applicable law.

6.     Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives and officers, are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Transactions pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (b) close the Transactions as contemplated in the Asset Purchase Agreement and this Order, (c) transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with the terms and conditions of the Asset Purchase Agreement, and (d) execute and deliver, perform under, consummate, implement and close fully the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Transactions, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and such other ancillary documents.

7.     This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Interests or Claims (as defined below in paragraph 8) (whether known or unknown) against any Debtor, any holders of Interests or Claims (as defined below in paragraph 8) against or on all or any portion of the Transaction Acquired Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Purchasing Entities and all successors and assigns of the Purchasing Entities, and any trustees, examiners or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases. The terms and provisions of the Asset Purchase Agreement and this Order shall inure to the benefit of the Debtors, their estates, and

16

their creditors, the Purchasing Entities, and their respective affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all persons asserting any Interests or Claims (as defined below in paragraph 8) in the Transaction Acquired Assets to be sold to the Purchasing Entities pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.

**Sale and Transfer of Acquired Assets**

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, upon the Closing Date and pursuant to the Asset Purchase Agreement, the Transaction Acquired Assets shall be transferred to the Purchasing Entities free and clear of all interests (to the extent permitted by applicable law), including, without limitation, Excluded Liabilities, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, options, deeds of trust, security interests, other interests, conditional sale or other title retention agreements, pledges, liens (including as that term is defined in the Asset Purchase Agreement and including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act,

17

including, but not limited to, any pension liabilities, retiree medical benefit liabilities, liabilities related to the Employee Retirement Income Security Act, liabilities related to the Internal Revenue Code, or any other liability relating to Debtors' current and former employees, including any withdrawal liabilities, of the Debtors or any of the Debtors' predecessors or Affiliates, claims (as that term is defined in the Bankruptcy Code), whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively, the "Interests or Claims"), with all such Interests or Claims to attach to the proceeds of the Transactions subsequent to the purchase, closing and transfer of the Transaction Acquired Assets in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

9.      On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Transaction Acquired Assets or a bill of sale transferring good and marketable title in such (a) Acquired Assets to Purchaser and (b) GrandCo Assets to Sun Finance and Catterton, each pursuant to the terms and allocations between Sun Finance and Catterton set forth in the Asset Purchase Agreement. On the Closing Date, this Order shall be construed and shall constitute any and all purposes a full and complete and general assignment of all right, title and interest of the

18

Debtors and each estate to the Purchaser in the Assumed Executory Contracts. For the avoidance of doubt, the Excluded Assets set forth in the Asset Purchase Agreement are not included in the Acquired Assets.

10.     Subject to the terms and conditions of this Order, the transfer of Transaction Acquired Assets to the Purchasing Entities pursuant to the Asset Purchase Agreement does not require any consents other than as specifically provided for in the Asset Purchase Agreement and constitutes a legal, valid and effective transfer of the Transaction Acquired Assets, and shall vest Purchasing Entities with right, title and interest of the Debtors in and to the Transaction Acquired Assets as set forth in the Asset Purchase Agreement, as applicable, free and clear of all Interests or Claims of any kind or nature whatsoever (except for the Assumed Obligations of the Purchaser).

11.     To the greatest extent available under applicable law and except as provided in the Asset Purchase Agreement, the Purchasing Entities, as provided by the Asset Purchase Agreement, shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Transaction Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchasing Entities as of the Closing Date as provided by the Asset Purchase Agreement.

12.     All entities that received notice of the Motion and who are presently, or on the Closing may be, in possession of some or all of the Acquired Assets to be sold, transferred or conveyed pursuant to the Asset Purchase Agreement are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date.

19

13.     In accordance with the Asset Purchase Agreement, the Debtors are directed to surrender possession of the GrandCo Assets to Sun Finance and Catterton on the Closing Date in accordance with the terms of the Asset Purchase Agreement.

14.     Except as expressly permitted or otherwise specifically provided by the Asset Purchase Agreement or this Order, all entities holding Interests or Claims in all or any portion of the Transaction Acquired Assets (other than the Assumed Obligations of the Purchaser) arising under or out of, in connection with, or in any way relating to the Debtors, the Transaction Acquired Assets, the operation of the Debtors' Business prior to the Closing Date or the transfer of the Transaction Acquired Assets to the Purchasing Entities, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchasing Entities, their Affiliates or their successors or assigns, their property or the Transaction Acquired Assets, such entities' Interests or Claims in and to the Transaction Acquired Assets. On the Closing Date, each creditor of the Debtors is authorized and directed to execute such documents and take all other actions as may be necessary to release Interests or Claims on the Transaction Acquired Assets, if any, as provided for herein, as such Interests or Claims may have been recorded or may otherwise exist. The transactions authorized herein shall be of full force and effect, regardless of the Debtors' lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

15.     Upon consummation of the Transactions set forth in the Asset Purchase Agreement, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests or Claims against or in the Transaction Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements,

20

instruments of satisfactions, releases of all Interests or Claims that the person or entity has with respect to the Transaction Acquired Assets, or otherwise, then (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Transaction Acquired Assets and (b) the Purchasing Entities are hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests or Claims in the Transaction Acquired Assets of any kind or nature. For the avoidance of doubt, to the extent necessary, upon consummation of the Transactions set forth in the Asset Purchase Agreement, the Purchasing Entities are authorized to file termination statements, lien terminations or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

16. All entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Transaction Acquired Assets to the Purchasing Entities in accordance with the terms of the Asset Purchase Agreement and this Order.

17. This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, federal, state and governmental agencies or departments, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release

21

any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Asset Purchase Agreement.

18. Upon the Closing, the Allowed Secured Claims shall be deemed satisfied in an amount equal to the Credit Bid in accordance with the allocation between Sun Finance and Catterton provided in the Asset Purchase Agreement. After deducting the applicable portion of the amount of the Credit Bid, the Pre-Petition Secured Amount shall be deemed to be an allowed claim in each of the Debtors' cases without further order of the Court. Upon Closing, the liens on the assets of the Debtors granted under the DIP Facility and the Pre-Petition Credit Facility to secure the indebtedness thereunder shall be deemed released solely with respect to the Acquired Assets and Sun Finance and Catterton, as applicable, shall take all reasonable actions to confirm removal of any such liens.

19. Effective upon the Closing Date and without further order of the Court, the Debtors and the Official Committee of Unsecured Creditors appointed in these cases in accordance with section 1102 of the Bankruptcy Code (the "Committee") shall waive any and all actions related to and release Sun Finance and the DIP Lenders (as defined in the DIP Order) from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the DIP Credit Agreement or the DIP Order, any documents related to the DIP Credit Agreement or the DIP Order, any aspect of the prepetition or postpetition relationship with Sun Finance and DIP Lenders and any Debtor, or any other acts or omissions by Sun Finance or DIP Lenders in connection with the DIP Credit Agreement or the DIP Order, any

documents related to the DIP Credit Agreement or the DIP Order and any aspect of their prepetition or postpetition relationship with any Debtor.

20. Effective upon the Closing Date and without further order of the Court, the Debtors and the Committee shall waive any and all actions related to and release the Prepetition Agent and the Prepetition Lenders (each as defined in the DIP Order and for the avoidance of doubt, including Catterton) from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Pre-Petition Credit Agreement or the DIP Order, any documents related to the Pre-Petition Credit Agreement or the DIP Order, any aspect of the prepetition or postpetition relationship with the Prepetition Agent and Prepetition Lenders and any Debtor, or any other acts or omissions by Prepetition Agent or Prepetition Lenders in connection with the Pre-Petition Credit Agreement or the DIP Order, any documents related to the Pre-Petition Credit Agreement or the DIP Order and any aspect of their prepetition or postpetition relationship with any Debtor.

**Contracts to be Assigned**

21. From and after the Effective Date, the Debtors shall not reject any executory Contracts or unexpired leases to which any Debtors is a party (collectively, the "Scheduled Contracts") unless otherwise agreed to in writing by Purchaser or as provided in the Asset Purchase Agreement.

22. Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, the Debtors' assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Asset Purchase Agreement of the Assumed Executory Contracts, including any Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase

23

Agreement, if any, is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

23. The Debtors are hereby authorized and directed in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the Closing Date of the sale of the Acquired Assets (or as otherwise provided in the Asset Purchase Agreement with respect to Designated Contracts), the Assumed Executory Contracts (or the Designated Contracts that are assumed and assigned in accordance with the Asset Purchase Agreement) free and clear of all Interests or Claims of any kind or nature whatsoever and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Executory Contracts to the Purchaser, including with respect to any Designated Contracts that are assumed and assigned to the Purchaser pursuant to the Asset Purchase Agreement.

24. Upon the Closing (or as otherwise provided in the Asset Purchase Agreement with respect to Designated Contracts), in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Executory Contract (including any Designated Contract that is assumed and assigned to the Purchaser pursuant to the Asset Purchase Agreement). The Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing, as further provided in the Asset Purchase Agreement.

25. The Assumed Executory Contracts, including any Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement, shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such

24

Assumed Executory Contract or Designated Contract that is assumed and assigned to Purchaser pursuant to the Asset Purchase Agreement (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer.

26.     Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, and except as otherwise provided by this Order, the Purchaser shall promptly pay the Cure Amounts of or relating to any Assumed Executory Contract (or Designated Contract that is assumed and assigned to the Purchaser pursuant to the Asset Purchase Agreement in accordance therewith), if any, as set forth in the Cure Notice (as defined in the Bidding Procedures Order) served by the Debtors on each of the parties to Scheduled Contracts, with respect to possible assumption and assignment thereof. The Cure Amounts are hereby fixed at the amounts set forth in the Cure Notice served by the Debtors, or the amounts determined on the record at the Sale Hearing, as the case may be, and the non-Debtor parties to the Assumed Executory Contracts, including the non-Debtor parties to any Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement, are forever bound by such Cure Amounts and are hereby enjoined from taking any action against the Purchaser or the Acquired Assets with respect to any claim for cure under any Assumed Executory Contract, including any Designated Contract that is assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement. The payment of the applicable Cure Amounts (if any) by the Purchaser shall (a) effect a cure of all defaults existing thereunder as of the date that such executory contracts or unexpired leases are assumed and (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default. The Purchaser shall then have assumed the Assumed Executory Contracts, including any Designated Contracts that are

25

assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement, and pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assumed Executory Contracts (or Designated Contracts that are assumed and assigned to the Purchaser pursuant to the Asset Purchase Agreement) shall not be a default thereunder. After the payment of the relevant Cure Amounts by the Purchaser, neither the Debtors nor the Purchaser shall have any further liabilities to the counterparties to the Assumed Executory Contracts, including with respect to any Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement, other than the Purchaser's obligations under the Assumed Executory Contracts or Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement, if any, that accrue and become due and payable on or after the date that such Assumed Executory Contracts, or Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement, are assumed.

27.     Notwithstanding anything to the contrary, the Purchaser may elect to take assignment of certain executory contracts and unexpired leases listed on Schedule 2.6(c) of the Asset Purchase Agreement (the "Designated Contracts") for up to sixty (60) days after the Closing Date of the Asset Purchase Agreement (the "Contract Retention Period"). Purchaser may, at its sole discretion and at any time during the Contract Retention Period, deliver to Debtors one (1) or more written notices (each, an "Assumption Notice") requesting assumption and assignment of any Designated Contract(s). Upon receipt of an Assumption Notice, the Debtors shall take all actions reasonably necessary to seek to assume and assign to Purchaser pursuant to section 365 of the Bankruptcy Code the Designated Contract(s) set forth in the applicable Assumption Notice, and Purchaser shall be responsible for satisfying any costs of cure

26

relating to such Designated Contracts, including filing with the Bankruptcy Court and serving a notice on such counterparty to the Designated Contract that identifies the Purchaser of the Acquired Assets and provides notice that the Debtors are assuming and assigning the Designated Contract to the Purchaser. To the extent that any Designated Contract is a Facility Lease, the Debtors hereby grant the Purchaser a license to use and possess the Facility which is leased pursuant to such Facility Lease; provided, however, that Purchaser shall have no liabilities or obligation under such Facility Lease, including with respect to environmental, health or safety matters. Such license shall commence on the Closing Date and shall terminate on the earlier of the date such Facility Lease is rejected and the last day of the Contract Retention Period. Notwithstanding anything in this Agreement to the contrary, on the date that any Designated Contract is assumed and assigned to Purchaser pursuant to Section 2.6(c) of the Asset Purchase Agreement, such Contract shall be deemed an Assumed Executory Contract for all purposes under the Asset Purchase Agreement.

28.     Purchaser may, at its sole discretion and at any time during the Contract Retention Period, deliver to the Debtors one (1) or more written notices (each, a "Rejection Notice") notifying Debtors of its intent not to assume any Designated Contract(s). On the date that Purchaser provides a Rejection Notice with respect to such Designated Contract, such Designated Contract will be deemed an Excluded Contract for all purposes under the Asset Purchase Agreement, the Debtors shall immediately reject such Excluded Contract, and all obligations arising thereafter in connection with such Excluded Contract shall be considered Excluded Liabilities under the Asset Purchase Agreement. Upon the expiration of the Contract Retention Period, all Designated Contracts that have not been deemed Assumed Executory Contracts pursuant to an Assumption Notice and have not been subject of a Rejection Notice

27

shall be automatically deemed to be Excluded Contracts, the Debtors shall immediately reject such Excluded Contracts, and all obligations arising thereafter in connection with such Excluded Contracts shall be considered Excluded Liabilities under the Asset Purchase Agreement.

29.     As soon as practicable after the Closing Date, the Debtors shall reject all Excluded Contracts. To the extent that any executory Contract or unexpired lease relating to the Business is not identified prior to the Closing Date or is not an Assumed Executory Contract, an Excluded Contract or a Designated Contract on the Closing Date, such executory Contract or unexpired lease shall be deemed an Excluded Contract and the Debtors shall immediately reject any such executory Contract or unexpired lease upon discovery.

30.     Notwithstanding anything to the contrary set forth in the Asset Purchase Agreement, the Debtors shall reject the Facility Leases listed on <u>Schedule 2.6(e)</u> of the Asset Purchase Agreement (the "<u>Specified Leases</u>") effective as of February 11, 2010. The Debtors grant Purchaser a license to use and possess the Facility which is leased pursuant to each of the Specified Leases. Such license shall commence on the Closing Date and shall terminate on February 11, 2010. With respect to each Specified Lease, Purchaser shall perform all of Debtors' ordinary course obligations under such Specified Lease and shall compensate Debtors for the ordinary course costs, in each case first arising after the Closing Date and actually incurred by Debtors after the Closing under such Specified Lease until February 11, 2010.

31.     Any provisions in any Assumed Executory Contracts (or any Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement) that prohibit or condition the assignment of such Assumed Executory Contracts (or such Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement) or allow the party to such Assumed Executory

28

Contracts (or to such Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement) to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Executory Contract (or such Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement), constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the Assumed Executory Contracts (or such Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement) have been satisfied.

32.     Any party having the right to consent to the assumption or assignment of any Assumed Executory Contract (or such Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement) that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

33.     Upon the conditions set forth in Section 2.6 through 2.9 of the Asset Purchase Agreement, including Purchaser's payment of the relevant Cure Amounts, if any, the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Executory Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Executory Contracts or the Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement.

34.     The Purchaser is able to provide adequate assurance of future performance under the relevant Assumed Executory Contracts (or under the relevant Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement) within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

35.     There shall be no assignment fees, increases, rent-acceleration or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Assumed Executory Contracts (or the Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement).

36.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all counterparties to the Assumed Executory Contracts, including any counterparties to the Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement, if any, are forever barred and permanently enjoined from raising or asserting against the Debtors or Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Executory Contracts, including related to any Designated Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Asset Purchase Agreement, existing as of the date that such Contracts are assumed or arising by reason of the Closing.

37.     Neither Purchaser nor any successor of Purchaser shall be responsible for or have any Interests or Claims or obligations arising out of any of the contracts, agreements or understandings that are Excluded Contracts, including with respect to any Designated Contracts that become Excluded Contracts after the Closing Date (except as specifically provided by the Asset Purchase Agreement).

38.     Within two (2) days after the Closing Date, the Debtors will file a
complete list of the Scheduled Contracts that were assumed and assigned, as of the Closing Date,
to the Purchaser. The Debtors will file a complete list of Designated Contracts, if any, at that
time.

39.     To the extent that the Purchaser requests assumption and assignment of
any Designated Contract after the Closing Date, the Debtors shall serve the non-Debtor
counterparty to such Designated Contract with the Assumption Notice substantially in the form
attached as Exhibit 4 to the Bidding Procedures Order. As soon as practicable after the Contract
Retention Period, the Debtors shall file final and complete list of all Assumed Executory
Contracts.

40.     Upon (i) service of an Assumption Notice substantially in the form
attached as Exhibit 4 to the Bidding Procedures Order and (ii) payment by Purchaser of the
associated Cure Amount(s), the assumption and assignment of the Designated Contracts shall be
deemed effective, without further order of the Court.

**Additional Provisions**

41.     Except as otherwise expressly provided in the Asset Purchase Agreement,
the Purchasing Entities shall have no obligation, as successor or otherwise (including with
respect to successor or vicarious liabilities of any kind or character), to pay wages, bonuses,
severance pay, benefits (including, without limitation, contributions or payments on account of
any under-funding with respect to any and all pension plans) or any other payment to employees
of Debtors or their Affiliates. The Purchasing Entities shall have no liability, as successor or
otherwise (including with respect to successor or vicarious liabilities of any kind or character),
with respect to any collective bargaining agreement, employee pension plan, employee welfare

or retention, benefit and/or incentive plan to which Debtors or their Affiliates are a party and relating to the Business (including, without limitation, arising from or related to the rejection or other termination of any such agreement), and the Purchasing Entities shall in no way, as successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), be deemed a party to or assignee of any such agreement, and no employee of the Purchasing Entities shall be deemed in any way covered by or a party to any such agreement, and all parties to any such agreement are hereby enjoined from asserting against the Purchasing Entities any and all Interests or Claims arising from or relating to such agreement. Any and all notices, if any, required to be given to the Debtors' or their Affiliates' employees pursuant to the Workers Adjustment and Relocation Adjustment Act, or any similar federal or state law, shall be the sole responsibility and obligation of the Debtors and their Affiliates and the Purchasing Entities shall have no responsibility or liability therefore.

42. Except for the Assumed Obligations of the Purchaser and without limiting paragraphs 8, 41 and 42 of this Order, the Purchasing Entities are not, by virtue of the consummation of the Transactions contemplated by the Asset Purchase Agreement, assuming nor shall they be liable or responsible, as a successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), under any theory of law or equity, including, any theory of antirust, environmental successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter raised, which may be asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors, or any of its predecessors or Affiliates or any obligations of the Debtors or their predecessors or Affiliates arising prior to the Closing Date, for any liabilities, debts, commitments or obligations (whether known or unknown, disclosed or

32

undisclosed, absolute, contingent, inchoate, fixed or otherwise) in any way whatsoever relating to or arising from the Transaction Acquired Assets or the Debtors' operation of its businesses or use of the Transaction Acquired Assets on or prior to the Closing Date or any such liabilities, debts, commitments or obligations that in any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid, discharged or performed on or prior to the Closing Date (in each case, including any liabilities that result from, relate to or arise out of tort or other product liability claims), or any liabilities calculable by reference to the Debtors or their assets or operations, or relating to continuing conditions existing on or prior to the Closing Date, including with respect to any of Debtors' predecessors or Affiliates, which liabilities, debts, commitments and obligations are hereby extinguished insofar as they may give rise to successor liability, without regard to whether the claimant asserting any such liabilities, debts, commitments or obligations has delivered to the Purchasing Entities a release thereof. Without limiting the generality of the foregoing, by virtue of the consummation of the Transactions contemplated by the Asset Purchase Agreement, the Purchasing Entities shall not be liable or responsible, as a successor or otherwise, including with respect to successor or vicarious liabilities of any kind or character, for the Debtors' liabilities, debts, commitments or obligations, whether calculable by reference to the Debtors, arising on or prior to the Closing and under or in connection with (i) any employment or labor agreements (including any collective bargaining agreements), consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtors are a party, (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors, (iii) the cessation of the Debtors' operations, dismissal of employees, or termination (including rejection) of employment or labor agreements (including

any collective bargaining agreements) or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment and Retraining Notification Act, (iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims, (v) to the extent permitted by applicable law, environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., (vi) any bulk sales or similar law, (vii) any liabilities, debts, commitments or obligations of, or required to be paid by, the Debtors for any Taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any Taxes relating to the business of the Debtors or the Transaction Acquired Assets for or applicable to the pre-closing period, (ix) any litigation, (x) any products liability, other tort or similar claims, whether pursuant to any state or any federal laws or otherwise including those arising from products or distribution thereof by or on behalf of Debtors, and (xi) any Excluded Liabilities. The Purchasing Entities have given substantial consideration under the Asset Purchase Agreement for the benefit of the holders of any Interests or Claims. The consideration given by the Purchasing Entities shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchasing Entities, which releases shall be deemed to have been

34

given in favor of the Purchasing Entities by all holders of Interests or Claims against or interests in the Debtors or any of the Transaction Acquired Assets.

43.     The recitation, in the immediately preceding paragraph of this Order, of specific agreements, plans or statutes is not intended, and shall not be construed, to limit the generality of the categories of liabilities, debts, commitments or obligations referred to therein.

44.     Except as otherwise expressly provided in the Asset Purchase Agreement, no person or entity, including, without limitation, any federal, state or local governmental agency, department or instrumentality, shall assert by suit or otherwise against the Purchasing Entities or their successors in interest any claim that they had, have or may have against the Debtors, or any liability, debt or obligation relating to or arising from the Transaction Acquired Assets, or the Debtors' operation of the Business or use of the Transaction Acquired Assets, including, without limitation, any liabilities calculable by reference to the Purchasing Entities or their assets or operations, by virtue of the consummation of the transactions contemplated by the Asset Purchase Agreement, and all persons and entities are hereby enjoined from asserting against the Purchasing Entities in any way any such claims, liabilities, debts or obligations.

45.     The Debtors, including but not limited to their respective officers, employees and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Asset Purchase Agreement and this Order. The Debtors shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Order.

46.     To the extent applicable, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (i) to allow the Purchasing Entities to give the Debtors any notice

provided for in the Asset Purchase Agreement, and (ii) to allow the Purchasing Entities to take any and all actions permitted by the Asset Purchase Agreement in accordance with the terms and conditions thereof.

47.     Within ten (10) days after the Closing, the Debtors shall take all necessary action to change their names and the names of all Affiliates to a name that does not include the word "Lang," "Avalanche," "Turner" or any other name or mark included in the Company Intellectual Property (including any name set forth on the signature pages to the Asset Purchase Agreement) or any translations, adaptations, derivations or combinations of any of the foregoing or any name or mark confusingly similar thereto.

48.     The Transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchasing Entities without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transactions shall not affect the validity of the Transactions (including the assumption and assignment of the Assumed Executory Contracts by the Purchaser, if any, and the sale free and clear of all Interests or Claims), unless such authorization and consummation of such Transactions are duly stayed pending such appeal. The Purchasing Entities are good faith buyers within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

49.     As a good faith purchasers of the Acquired Assets, the Purchasing Entities have not colluded with any of the other bidders, potential bidders or any other parties interested in the Acquired Assets, and therefore neither the Debtors nor any successor in interest to the Debtors' estates nor any other party in interest shall be entitled to bring an action against the

Purchasing Entities or any if their Affiliates, and the sale of the Acquired Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

50.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these chapter 11 cases, (b) any subsequent chapter 7 or chapter 11 case of the Debtors or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

51.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Transactions.

52.     Nothing in this order or the Asset Purchase Agreement shall be deemed a modification of any terms of the lease agreement ("Lease") between the Debtors and MB PB Portfolio, LLC ("Landlord") for nonresidential real property located at 500 North Shore Drive, Hartland, Wisconsin ("Hartland Premises"), and the Debtors shall not be relieved of any of their obligations to Landlord under the Lease and/or the Bankruptcy Code including, but not limited to, 11 U.S.C. 365(d)(3). The Debtors shall not permit Purchaser to use and occupy the Hartland Premises in a manner that is prohibited by or that is inconsistent with any terms or provisions of the Lease, and Purchaser shall be expressly bound to all provisions of the Lease that specifically relate to operations of Purchaser at the Hartland Premises during its use and occupancy of the Premises directly to Inland, other than the payment of recurring monetary obligations such as rent and real estate tax payments. For the avoidance of doubt, the Landlord agrees to Purchasers' use of the Hartland Premises in accordance with the Debtors' license of the Hartland Premises as set forth in the Asset Purchase Agreement. On February 11, 2010, the Landlord agrees that the Lease shall be deemed rejected, and the Debtors shall be required to unequivocally surrender possession of the Hartland Premises to Landlord on or prior to February 11, 2010 by vacating the

37

Hartland Premises and returning all keys to Landlord. The Purchaser shall have no liability to the Landlord for claims, interests or other liabilities related to or arising out of the Lease, including with respect to rejection of the Lease and any environmental liabilities existing prior to the Closing or incurred on account of pre-Closing activities, other than those claims, interests or liabilities that relate to the operations of the Purchaser at the Hartland Premises during its use and occupancy of the Hartland Premises.

53.    On March 7, 2006, AMK was dissolved and The Lang Companies, LLC ("Lang") became its successor in interest. As the successor in interest to AMK, Lang became the owner of AMK's interests in AFL's assets (including the rights to a 33.34% interest in the Royalties). Accordingly, the Debtor hereby seeks to transfer its 33.34% interest in the Royalties to the Purchaser pursuant to the Asset Purchase Agreement, as of the Closing Date. Further, the Purchaser agrees to provide Smith and Kelley a periodic accounting of accrued Royalties and to pay Smith and Kelley's portion of the Royalties directly to Smith and Kelley after the Closing Date; provided, however, that neither the Purchaser nor any of its Affiliates shall have any obligation or liability with respect to any Royalties that may have accrued or been owed to Smith or Kelley prior to the Closing Date. The Debtor, Smith and Kelley acknowledge that there is a dispute as to the ownership of the Works identified in Section 10 of Amendment No. 3 to the Asset Purchase Agreement. Notwithstanding the foregoing, the Debtor, Smith and Kelley acknowledge that there is no dispute with respect to the Debtor's right and title to a 33.34% interest in the Royalties and the Debtor's ability to transfer such interest pursuant to the Asset Purchase Agreement. Accordingly, to the extent that it is later determined that the Debtor does not own the Works, then no transfer of such Works shall be deemed to have occurred pursuant to the Asset Purchase Agreement; provided, however, that nothing in this paragraph 54 shall limit

38

or extinguish the Purchaser's interest in the Royalties validly transferred by the Debtor to the Purchaser pursuant to the Asset Purchase Agreement.

54.     The Debtor hereby seeks to transfer its rights under the termination clause of the Artist Contract (the "Heart in Hand Artist Contract"), by and between AMK Holdings, Ltd. d/b/a The Lang Companies and Heart in Hand, Ltd. ("Heart in Hand"), dated as of August 6, 2003, as amended August 15, 2006.  Accordingly, the Purchaser agrees to provide a periodic accounting of accrued royalties under the termination clause and to pay any royalties related thereto directly to Heart in Hand in accordance with the Heart in Hand Artist Contract.  For the avoidance of doubt, nothing in this paragraph 55 shall be, or shall be deemed to be, an assumption by the Debtor and assignment to the Purchaser of the Heart in Hand Artist Contract.

55.     The Debtor hereby seeks to transfer its rights under the termination clause of the Artist Contract (the "Smith Artist Contract"), by and between Shelly Reeves Smith and AMK Holdings, Ltd. d/b/a The Lang Companies, dated as of June 4, 2003.  Accordingly, the Purchaser agrees to provide a periodic accounting of accrued royalties under the termination clause and to pay any royalties related thereto directly to Smith in accordance with the Smith Artist Contract.  For the avoidance of doubt, nothing in this paragraph 56 shall be, or shall be deemed to be, an assumption by the Debtor and assignment to the Purchaser of the Smith Artist Contract.

56.     The License Agreement dated as of January 1, 2009 by and between Disney Consumer Products, Inc. ("Disney") and Lang Holdings, Inc. (including Schedule 1 thereto, the "Disney License") shall be assumed and assigned to the Purchaser pursuant to this Order only if, on or prior to the Closing Date, Disney consents in writing to such assumption and

assignment. If such written consent is not provided by Disney, then the Disney License shall be an Excluded Asset and shall be rejected by the Debtors effective as of the Closing Date.

57.    Purchaser shall offer employment immediately prior to the Closing (but contingent on the occurrence of the Closing) to all employees of the Debtors that are terminated by the Debtors immediately prior to Closing pursuant to Section 10.1 of the Asset Purchase Agreement.

58.    The updated version of Schedule 2.3(a)(v) to be delivered by the Purchaser pursuant to Section 2.7(c) of the Asset Purchase Agreement shall include all ordinary course administrative claims incurred by the Debtors in the ordinary course of business since the delivery by Purchaser of Schedule 2.3(a)(v) pursuant to Section 2.7(b) of the Asset Purchase Agreement.

59.    The Debtors will escrow $525,000 to pay the allowed fees and expenses of professional persons retained by the Committee incurred on and prior to delivery of a Carve-Out Trigger Notice pursuant to paragraph 8 of the Amended Final Financing Order [Docket No. 143].

60.    Pending the Court's ruling on the Motion of the Official Committee of Unsecured Creditors for the Entry of an Order Authorizing It to Commence and Prosecute Causes of Action on a Nunc Pro Tunc Basis and on Behalf of the Debtors' Estates [Docket No. 231] (the "Committee Motion"), the releases and injunctions granted to Catterton herein shall not apply with respect to the claims asserted in the Committee Motion that the Prepetition Lenders (as defined in the Committee Motion) failed to perfect their liens and security interests in certain of the Debtors' bank accounts; provided, however, that the Committee's recovery in such adversary proceeding, if any, is capped at, and under no circumstances shall exceed $175,000;

and provided, further, however, that nothing in this Order shall constitute a waiver of Catterton's rights or defenses with respect to the adversary proceeding, all of which are expressly reserved..

61.     The failure specifically to include any particular provisions of the Asset Purchase Agreement including any of the documents, agreements or instruments executed in connection therewith in this Order shall not diminish or impair the efficacy of such provision, document, agreement or instrument, it being the intent of the Court that the Asset Purchase Agreement and each document, agreement or instrument be authorized and approved in its entirety.

62.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

63.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern.

64.     To the extent there are any inconsistencies between the terms of this Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

65.     The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

66.     The provisions of this Order are nonseverable and mutually dependent.

67.     Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 and 9014, this Order shall be effective immediately upon entry; provided, however, that the Debtors and the Purchasing Entities are authorized to close the Transactions no sooner than *5:00 O'clock p.m. (ET) on* October 8, 2009.

68.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

69.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchasing Entities, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transactions.

Dated: October __, 2009
   Wilmington, Delaware

         The Honorable Kevin J. Carey,
         Chief United States Bankruptcy Judge

